No. 24-5566

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GARY SANCHEZ,
*Plaintiff and Appellant*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,
*Defendant and Appellee.*

**On Appeal from the United States District Court
for the Southern District of California**
No. 24-cv-767-RSH-MSB
Hon. Robert S. Huie, District Judge

## DEFENDANT-APPELLEE'S OPPOSITION TO PLAINTIFF-APPELLANT'S MOTION FOR INJUNCTION PENDING APPEAL

ROB BONTA
  *Attorney General of California*
THOMAS S. PATTERSON
  *Senior Assistant Attorney General*
R. MATTHEW WISE
  *Supervising Deputy Attorney General*

KEVIN L. QUADE
  *Deputy Attorney General*
CALIFORNIA DEPARTMENT OF JUSTICE
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-7693
E-mail: Kevin.Quade@doj.ca.gov
  *Attorneys for Defendant and Appellee*

September 30, 2024

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................... 1

Background ............................................................................ 2

Legal Standard for Rule 8 Motions .................................... 3

Argument ............................................................................... 4

    I.     Plaintiff Fails to Make the Requisite Showing for Rule 8 Relief ......................................................................... 4

    II.    Plaintiff Has Not Shown that an Injunction Pending Appeal Is Warranted .......................................... 6

        A.    The Equitable Factors Weigh Against an Injunction Pending Appeal ............................. 7

        B.    Plaintiff Is Not Likely to Succeed on the Merits of His Appeal ........................................... 9

            1.    Firearm silencers are not "Arms" protected by the Second Amendment ....................................... 9

            2.    Firearm silencers are not in common use for self-defense and fit within a category of dangerous and unusual items that can be prohibited ........................................................... 13

            3.    California's prohibition on silencers is consistent with this Nation's history and tradition of firearms regulation ........................... 15

Conclusion ........................................................................... 17

# TABLE OF AUTHORITIES

**Page**

CASES

*B&L Prods., Inc. v. Newsom*
104 F.4th 108 (9th Cir. 2024) ............................................................... 9, 13

*Capen v. Campbell*
708 F. Supp. 3d 65 (D. Mass. 2023) ......................................................... 11

*Cox v. United States*
2023 WL 4203261 (D. Alaska June 27, 2023) ........................................... 12

*Cumberland Telephone & Telegraph Co. v. La. Pub. Serv.*
*Comm'n*
260 U.S. 212 (1922) ..................................................................................... 5

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland*
*Sec.* (*DSSA*)
664 F. Supp. 3d 584 (D. Del. 2023) .......................................................... 16

*District of Columbia v. Heller*
554 U.S. 570 (2008) ................................................................. 9, 10, 13, 14

*Doe v. San Diego Unif. Sch. Dist.*
19 F.4th 1173 (9th Cir. 2021) ..................................................................... 3

*Drakes Bay Oyster Co. v. Jewell*
747 F.3d 1073 (9th Cir. 2014) ................................................................. 4, 6

*Nat'l Ass'n for Gun Rights v. Lamont* (*NAGR*)
685 F. Supp. 3d 63 (D. Conn. 2023) ........................................................ 14

*New York State Rifle & Pistol Ass'n v. Bruen*
597 U.S. 1 (2022) ................................................................................. *passim*

*Respect Maine PAC v. McKee*
562 U.S. 996 (2010) ..................................................................................... 4

# TABLE OF AUTHORITIES
## (continued)

Page

*S. Bay United Pentecostal Church v. Newsom*
   140 S. Ct. 1613 (2020)...................................................................4

*Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*
   472 F.3d. 1097 (9th Cir. 2006) ......................................................4

*Teixeira v. Cnty. of Alameda*
   873 F.3d 670, 680 (9th Cir. 2017) ...............................................13

*United States v. Al-Azhari*
   2020 WL 7334512 (M.D. Fl. Dec. 14, 2020) .............................12

*United States v. Berger*
   __ F. Supp. 3d __, 2024 WL 449247 (E.D. Pa. Feb. 6, 2024) ............10, 11

*United States v. Comeaux*
   2024 WL 115929 (W.D. La. Jan. 10, 2024) ......................................7, 8, 14

*United States v. Cooperman*
   2023 WL 4762710 (N.D. Ill. July 26, 2023) .............................11

*United States v. Cox*
   906 F.3d 1170 (10th Cir. 2018) ...........................................10, 11

*United States v. El-O-Pathic Pharm.*
   192 F.2d 62 (9th Cir. 1951) ..........................................................5

*United States v. Grey*
   2018 WL 4403979 (C.D. Cal. Sept. 13, 2018) ......................................8, 14

*United States v. Hasson*
   2019 WL 4573424 (D. Md. Sept. 20, 2019)...............................12

*United States v. McCartney*
   357 F. App'x 73 (9th Cir. 2009) ............................................7, 14

*United States v. Perkins*
   2008 WL 4372821 (D. Neb. Sept. 23, 2008)................................8, 14

# TABLE OF AUTHORITIES
## (continued)

Page

*United States v. Peterson*
    2023 WL 5383664 (E.D. La. Aug. 21, 2023) ............................................. 11

*United States v. Rahimi*
    602 U.S. __, 144 S. Ct. 1889 (2024) ................................................. 12, 15, 16

*United States v. Saleem*
    659 F. Supp. 3d 683 (W.D.N.C. 2023) ...................................................... 12

*United States v. Villalobos*
    2023 WL 3044770 (D. Idaho Apr. 21, 2023) ............................................ 12

*Protect Our Water v. Flowers*
    377 F. Supp. 2d 882 (E.D. Cal. 2002) ........................................................ 6

*Winter v. Natural Res. Def. Council, Inc.*
    555 U.S. 7 (2008) ...................................................................................... 4, 7

**STATUTES**

1881 Illinois Laws 73, § 1 ................................................................................ 16

1837 Alabama Legislative Acts 7, No. 11, § 2 ................................................ 16

1837 Georgia Acts 90, § 1 ............................................................................... 16

1849 New York Law, 403-404, ch. 278, §§ 1-2 ............................................. 16

1849 Vermont Acts & Resolves 26, No. 36, §§ 1-2 ........................................ 16

1912 Vermont Acts & Resolves, No. 237, p. 310 ........................................... 16

102 Virginia Law Review. 687, 688 (2016) .................................................... 14

1850 Massachusetts General Statutes, ch. 194, § 2 ......................................... 16

1855 Kentucky Legislative Acts 96, ch. 636, § 1 ........................................... 16

1868 Florida Statute, ch. 1637 ........................................................................ 16

iv

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

1877 North Dakota Laws 794, § 455 ................................................................16

1909 Maine Law, ch. 129, p. 141 ...................................................................16

1913 Minnesota Law, ch. 64, p. 55 ................................................................16

1927 Michigan Public Acts No. 372, pp. 888-89 ...........................................16

1927 Rhode Island Public Law, ch. 1052, p. 259 ...........................................16

1763-1775 New Jersey Laws 346, ch. 539, § 10 ............................................15

California Penal Code
    § 17210 ..............................................................................3, 8, 10, 11
    § 33410 ....................................................................................2, 3, 10

California Statutes, Chapter 39 ................................................................2, 8, 16

The Revised Statutes of the State of Florida 783, tit. 2, art. 5, §
    2425 (1892) ................................................................................................16

Tennessee Public Acts 200, Chapter 137, § 1 ................................................16

**CONSTITUTIONAL PROVISIONS**

Constitution of the United States Second Amendment .............................*passim*

Constitution of the United States Fourteenth Amendment .........................3, 16

**COURT RULES**

Federal Rules of Appellate Procedures

    Rule 8 ................................................................................................1, 3, 4, 6

    Rule 8(a)(1)(C) ......................................................................................3, 5

    Rule 8(a)(2)(A)(i) ......................................................................................5

## TABLE OF AUTHORITIES
### (continued)

**Page**

Federal Rules of Civil Procedures

Rule 62(d) ....................................................................................... 6

## INTRODUCTION

Plaintiff and Appellant Gary Sanchez has appealed a district court order dismissing his Second Amendment challenge to a California statute that prohibits the possession of firearm silencers. He now files a pro se motion seeking to enjoin enforcement of the State's prohibition pending his appeal. This Court should deny his request.

At the threshold, Plaintiff's motion is procedurally improper. Rule 8 of the Federal Rules of Appellate Procedure requires that a party seeking an injunction pending appeal either first move for such relief in the district court or demonstrate that doing so would be impracticable. Plaintiff has not moved for an injunction pending appeal in the district court and makes no showing in his motion that it would have been futile or impractical to do so.

Plaintiff also has not met the necessary requirements for an injunction pending appeal. As to the equitable factors, Plaintiff does not even attempt to show that an injunction is necessary to prevent imminent irreparable harm. Nor could he. Plaintiff may possess firearms and ammunition for lawful self-defense while this appeal is pending, even if he cannot use them with a silencer. The public interest does not favor upsetting the State's longstanding prohibition on firearm silencers, given their use in criminal activity.

Plaintiff also has not established that he is likely to succeed on his appeal. Every federal district court to have confronted the question has concluded that firearm silencers are not protected by the Second Amendment. As the district court correctly held, a silencer is neither a weapon itself nor a component of a firearm that is integral to its operation. As such, the device is not an "Arm." Plaintiff's claim also fails because silencers are not in common use for self-defense and are the type of dangerous and unusual item that is not eligible for Second Amendment protection. Even assuming that the Second Amendment's text protects silencers, California's prohibition is consistent with the Nation's history and tradition of firearms regulation.

## BACKGROUND

California has prohibited possession of firearm silencers since 1933. *See* 1933 Cal. Stat., ch. 39, at 329-30. California Penal Code section 33410 states, "Any person, firm, or corporation who within this state possesses a silencer is guilty of a felony and upon conviction thereof shall be punished by imprisonment . . . or by a fine not to exceed ten thousand dollars ($10,000), or by both that fine and imprisonment." A "silencer" is defined as "any device or attachment of any kind designed, used, or intended for use in silencing, diminishing, or muffling the report [i.e., sound of the discharge] of a firearm," as well as "any combination of parts, designed or redesigned, and intended for use in assembling a silencer or

fabricating a silencer and any part intended only for use in assembly or fabrication of a silencer."  Cal. Penal Code § 17210.

On April 29, 2024, Plaintiff filed a complaint alleging that section 33410 violates the Second and Fourteenth Amendments to the United States Constitution on its face.  Dist. Ct. Dkt. 1.  The Attorney General filed a motion to dismiss on June 24, 2024.  Dist. Ct. Dkt. 11.  On August 28, 2024, the district court dismissed Plaintiff's complaint without leave to amend, holding that silencers are not "Arms" entitled to presumptive protection under the Second Amendment's plain text.  Dist. Ct. Dkt. 17.

Plaintiff filed a notice of appeal on September 11, 2024.  Dist. Ct. Dkt. 19. On September 20, 2024, he filed the instant motion for an injunction pending appeal in this Court.  ECF No. 4.1 (PI Mot.).

## LEGAL STANDARD FOR RULE 8 MOTIONS

Rule 8 of the Federal Rules of Appellate Procedure permits a party to seek in the Court of Appeals an order "suspending, modifying, restoring, or granting an injunction while an appeal is pending."  Fed. R. App. P. 8(a)(1)(C).  In determining whether to grant an injunction pending appeal, the Court applies an inquiry similar to the test for preliminary injunctions.  *Doe v. San Diego Unif. Sch. Dist.*, 19 F.4th 1173, 1176 (9th Cir. 2021).  The movant must establish:  (1) a likelihood of success on the merits of their claim; (2) that they are likely to suffer irreparable

harm absent preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d. 1097, 1100 (9th Cir. 2006). "When the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

The Supreme Court has also stated that a motion for an order *granting* an injunction pending appeal "demands a significantly higher justification than a stay request because, unlike a stay, an injunction does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts." *Respect Maine PAC v. McKee*, 562 U.S. 996, 996 (2010) (internal quotation marks omitted); *see also S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) (injunctions pending appeal are granted "where the legal rights at issue are indisputably clear and, even then, sparingly and only in the most critical and exigent circumstances" (internal quotation marks omitted)).

## ARGUMENT

### I. PLAINTIFF FAILS TO MAKE THE REQUISITE SHOWING FOR RULE 8 RELIEF

At the outset, Plaintiff's motion is procedurally improper. Under Rule 8, a party seeking an injunction pending appeal "must ordinarily move first in the

district court" for such relief. Fed. R. App. P. 8(a)(1)(C). This rule flows from the well-recognized principle that a district court, rather than an appellate court, is best equipped to consider the facts necessary for determination of whether an injunction pending appeal is warranted. *Cumberland Telephone & Telegraph Co. v. La. Pub. Serv. Comm'n*, 260 U.S. 212, 219 (1922); *United States v. El-O-Pathic Pharm.*, 192 F.2d 62, 79 (9th Cir. 1951). However, a party may move for an injunction in the Court of Appeals in the first instance upon a showing "that moving first in the district court would be impracticable." Fed. R. App. P. 8(a)(2)(A)(i).

Plaintiff's motion satisfies neither of these prerequisites. Plaintiff has not asserted that he first moved for an injunction pending appeal in the district court. He, in fact, made no such motion. *See* Dist. Ct. Dkt. After the district court concluded that Plaintiff's complaint failed to state a claim upon which relief could be granted and dismissed the action without leave to amend, Plaintiff did not ask the court to enjoin California's statutory prohibition on silencer possession while he pursued an appeal.

Plaintiff also makes no attempt to show that a motion for injunction pending appeal would have been impracticable for any reason. Although the district court ultimately concluded that Plaintiff had failed to state a viable constitutional claim, that conclusion does not establish Plaintiff's request would have been necessarily futile. The district court could have granted an injunction pending appeal, if it

5

determined that Plaintiff's arguments implicated "serious legal questions" going to the merits, and that "the balance of hardships tip[ped] sharply" in Plaintiff's favor. *Drakes Bay Oyster Co.*, 747 F.3d at 1082 n.4 (quoting *United States v. Houser*, 804 F.2d 565, 568 (9th Cir. 1986)); *see also Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2002) ("[a]n injunction is frequently issued where the trial court is charting a new and unexplored ground" and the holding "may succumb to appellate review") (internal quotation marks omitted). Indeed, if an adverse district court decision were sufficient to establish impracticability, Rule 8's requirement that a party seeking an injunction pending appeal do so first in the district court would be rendered meaningless. *But see* Fed. R. Civ. P. 62(d) (authorizing district courts to "grant an injunction . . . [to] secure the opposing party's rights" from a "final judgment that . . . denies an injunction.").

Because Plaintiff's motion fails to meet Rule 8's threshold requirements, it should be dismissed.

## II. PLAINTIFF HAS NOT SHOWN THAT AN INJUNCTION PENDING APPEAL IS WARRANTED

Even if Plaintiff's motion had satisfied Rule 8's requirements, it should be denied for failing to meet the necessary requirements for an injunction pending appeal. Plaintiff must establish: (1) a likelihood of success on the merits of his claim; (2) that he is likely to suffer irreparable harm absent preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the

6

public interest. *Winter*, 555 U.S. at 20. Each of these factors weighs against the requested relief.

### A. The Equitable Factors Weigh Against an Injunction Pending Appeal

Plaintiff fails to substantiate the equitable considerations that would warrant an injunction pending appeal—that an injunction is needed to prevent irreparable harm and that the equities and the public interest favor an injunction. *Winter*, 555 U.S. at 20. This is fatal to his request.

Plaintiff does not assert that he will face irreparable harm absent an injunction pending appeal. To the contrary, he has premised his claim that silencers are constitutionally protected on the argument that the devices enhance the shooting experience, not that they are necessary to discharge a firearm. *See* PI Mot. at 2 ("Silencers increase ease of use, speed of use, and Accuracy by reducing muzzle flash, . . . by reducing recoil, . . . and by reduce noise."). Plaintiff can continue to possess and carry firearms and ammunition for self-defense, even if he is unable to use a firearm silencer while his appeal is pending.

On the other hand, the equities and public interest tip sharply against an injunction. Numerous courts, including this Court, have concluded that silencers are inherently and uniquely dangerous. *See United States v. McCartney*, 357 F. App'x 73, 76 (9th Cir. 2009) (silencers fit within a category of "dangerous and unusual" items that are not typically possessed for lawful purposes); *United States*

*v. Comeaux*, 2024 WL 115929, at *3 (W.D. La. Jan. 10, 2024) (noting that silencers have been perceived by the American public as dangerous and unusual from the time they were first patented); *United States v. Grey*, 2018 WL 4403979, at *13 (C.D. Cal. Sept. 13, 2018) ("[T]he Second Amendment does not extend to 'dangerous and unusual weapons' such as silencers."); *United States v. Perkins*, 2008 WL 4372821, at *4 (D. Neb. Sept. 23, 2008) (similar).  As one court explained, a silencer "has the potential to allow a criminal to fire more shots without detection, avoid apprehension after shooting someone, or both." *Comeaux*, 2024 WL 115929, at *3.  California has long recognized this dangerousness, first banning the devices in 1933.  *See* 1933 Cal. Stat., ch. 39, pp. 329-30.

Rather than "preserv[ing] the status quo," as Plaintiff contends, *see* PI Mot. at 2, the proposed injunction would upend nearly a century of state regulation aimed at protecting the public.  Silencers, by their inherent design, render it more difficult for potential victims to flee from an active shooter, and for law enforcement to locate and neutralize the danger.  *See* Cal. Penal Code § 17210 (defining a "silencer" as "any device or attachment of any kind designed, used, or intended for use in silencing, diminishing, or muffling the report of a firearm").  Thus, while silencers are not necessary for the exercise of Second Amendment rights, they present a uniquely heightened risk of lethality when used for criminal purposes.

**B.    Plaintiff Is Not Likely to Succeed on the Merits of His Appeal**

Plaintiff also cannot succeed on the merits of his constitutional claim.  As he did below, Plaintiff asserts that he has a Second Amendment right to possess a firearm silencer.  PI Mot. at 2-3.  The district court correctly dismissed that claim as a matter of law.  Dist. Ct. Dkt. 17 at 3-6.  The plain text of the Second Amendment does not protect firearm silencers, and California's prohibition is consistent with historical tradition.

**1.    Firearm silencers are not "Arms" protected by the Second Amendment**

The Second Amendment "codified a *pre-existing* right."  *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).  "'[L]ike most rights, the right secured by the Second Amendment is not unlimited.'"  *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 21 (2022) (quoting *Heller*, 554 U.S. at 626).  The amendment has never been understood to confer an unfettered "right to keep and carry any weapon whatsoever," and the Supreme Court has recognized that certain weapons and instruments "may be banned."  *Heller*, 554 U.S. at 626-27.

The threshold question under *Bruen* is whether a plaintiff has carried their burden to establish that "the Constitution presumptively protects" their proposed course of conduct.  *Bruen*, 597 U.S. at 24; *B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 118-19 (9th Cir. 2024).  Where a plaintiff contends that possession of a prohibited item is covered by the Second Amendment, they bear an initial burden

to establish that the item fits within the definition of "Arm," as that term was originally understood. *Heller*, 554 U.S. at 581.

Here, as the district court correctly held, Plaintiff cannot establish that silencers are presumptively protected as "Arms" under the plain text of the Second Amendment. *Heller* defined "Arms" as "[w]eapons of offence, or armour of defence." *Heller*, 554 U.S. at 581. Put differently, they are "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *Id.* Silencers do not meet that definition. As explained, California law defines a "silencer" as "any device or attachment of any kind designed, used, or intended for use in silencing, diminishing, or muffling the report of a firearm." Cal. Penal Code § 17210 (referencing Cal. Penal Code § 33410). Such a device necessarily cannot be used to "cast at or strike another" and has no inherent usefulness in the case of confrontation. *Heller*, 554 U.S. at 581. A silencer has neither inherent offensive nor defensive capability, but rather, is a firearm accessory that has no intrinsic self-defense purpose. *See United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018) (concluding that silencers are not "bearable arms" covered by the Second Amendment).

Nor can Plaintiff establish that silencers are subsumed within the textual definition of "Arms" as a protected component integral to the operation of a firearm. A silencer is "unnecessary to the essential operation of a firearm." *United*

10

*States v. Berger*, __ F. Supp. 3d __, 2024 WL 449247, at *14-17 (E.D. Pa. Feb. 6, 2024). Instead, the device is designed only to muffle the byproduct of an otherwise functional firearm after it has been discharged—namely, lessening the "report" or sound associated with discharging a firearm. *See* Cal. Penal Code § 17210.

Indeed, for these reasons, and as the district court noted, *see* Dist. Ct. Dkt. 17 at 5-6, every federal court to address this issue has concluded that silencers are not protected by the Second Amendment, with the vast majority concluding that silencers do not constitute "Arms" under the plain constitutional text. *See, e.g.*, *Cox*, 906 F.3d at 1186 ("[B]ecause silencers are not 'bearable arms,' they are outside the Second Amendment's guarantee."); *Berger*, 2024 WL 449247, at *14-17 (silencer not covered by text of Second Amendment "because it is merely an accessory which is unnecessary to the essential operation of a firearm"); *Capen v. Campbell*, 708 F. Supp. 3d 65, 89 (D. Mass. 2023) ("[S]ome accessories, such as silencers, do not affect the essential operation of a weapon and so do not fall within the scope of the Second Amendment's protection."); *United States v. Peterson*, 2023 WL 5383664, at *2 (E.D. La. Aug. 21, 2023) ("[S]ilencers are not bearable arms within the score of the Second Amendment even in light of *Bruen* or its progeny."); *United States v. Cooperman*, 2023 WL 4762710, at *1 (N.D. Ill. July 26, 2023) ("The plain text of the Second Amendment does not protect accessories

11

that are not bearable arms, such as silencers."); *Cox v. United States*, 2023 WL 4203261, at *7 (D. Alaska June 27, 2023) ("Silencers are firearms accessories and not 'arms' for purposes of Second Amendment Protection."); *United States v. Villalobos*, 2023 WL 3044770, at *12 (D. Idaho Apr. 21, 2023) ("[S]ilencers are not bearable arms within the meaning of the Second Amendment and are not constitutionally protected."); *United States v. Saleem*, 659 F. Supp. 3d 683, 695 (W.D.N.C. 2023) (same); *United States v. Al-Azhari*, 2020 WL 7334512, at *3 (M.D. Fl. Dec. 14, 2020) (same); *United States v. Hasson*, 2019 WL 4573424, at *4 (D. Md. Sept. 20, 2019) (same).

Plaintiff suggests that California's prohibition is unconstitutional because certain firearms sold with built-in silencers are virtually inoperable without them. PI Mot. at 2.[1] Even accepting the truth of those allegations, Plaintiff asserts a facial Second Amendment claim, *see* Dist. Ct. Dkt. 1 at 2, which requires proof that "'no set of circumstances exists under which the [law] would be valid.'" *United States v. Rahimi*, 602 U.S. __, 144 S. Ct. 1889, 1898 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Plaintiff's allegations do not state a claim that California's prohibition on all silencers, built-in or not, is unconstitutional in all applications.

---

[1] Plaintiff lists as examples "the Chinese Type 64 Silenced Pistol, the Soviet MSP Groza silent pistol, and the Ruger SILENT-SR ISB." PI Mot. at 2.

### 2. Firearm silencers are not in common use for self-defense and fit within a category of dangerous and unusual items that can be prohibited

Even if Plaintiff could carry his burden to demonstrate that silencers meet the historical definition of "Arms," the Supreme Court has emphasized that not every "*type of weapon*" is "eligible for Second Amendment protection." *Heller*, 554 U.S. at 622. In determining what types of weapons fall within the scope of the Second Amendment, the Supreme Court has clarified that only "weapons 'in common use' today for self-defense" are eligible for protection, *Bruen*, 597 U.S. at 32, while "'dangerous and unusual weapons'" may be banned, *Heller*, 554 U.S. at 627. Plaintiff's constitutional challenge fails in both respects.

As to common use for self-defense, a court looks to the objective features of the instrument in question to determine whether it constitutes a "self-defense weapon." *Heller*, 554 U.S. at 629. As explained above, a silencer is not a weapon and has no objective features establishing its utility for offensive or defensive confrontation. Plaintiff argues that silencers enhance the shooting experience by reducing recoil, flash, and sound. PI Mot. at 2. But even if these allegations are presumed to be true, they are not relevant to the constitutional analysis. "'[T]he Second Amendment does not elevate convenience and preference over all other considerations.'" *B&L Prods.*, 104 F.4th at 119 (quoting *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 680 (9th Cir. 2017) (en banc)). Plaintiff fails to establish

13

that silencers are in common use "for ordinary self-defense." *Bruen*, 597 U.S. at 60.

Moreover, silencers are the type of "dangerous and unusual" firearm accessory that may be banned. *See Bruen*, 597 U.S. at 21; *Heller*, 554 U.S. at 627. As used by the Supreme Court, the phrase "dangerous and unusual" conveys a singular meaning, *see* Bray, *"Necessary and Proper" and "Cruel and Unusual": Hendiadys in the Constitution*, 102 Va. L. Rev. 687, 688 (2016), that a weapon or item possesses some heightened "level of lethality or capacity for injury" that makes it "especially dangerous," *Nat'l Ass'n for Gun Rights v. Lamont* (*NAGR*), 685 F. Supp. 3d 63, 90 (D. Conn. 2023).

As noted, numerous courts have held that silencers are "dangerous and unusual" devices that fall outside the scope of the Second Amendment. *McCartney*, 357 F. App'x at 76; *Comeaux*, 2024 WL 115929, at *3; *Grey*, 2018 WL 4403979, at *13; *Perkins*, 2008 WL 4372821, at *4. A silencer "has the potential to allow a criminal to fire more shots without detection, avoid apprehension after shooting someone, or both." *Comeaux*, 2024 WL 115929, at *3. Where the sound of gunshots is muffled by a silencer, common sense dictates that it is necessarily more difficult to identify the location of a shooter, which in turn, makes it more difficult for potential victims to flee and for law enforcement to neutralize the danger.

14

### 3.   California's prohibition on silencers is consistent with this Nation's history and tradition of firearms regulation

Even if Plaintiff could satisfy his threshold burden under *Bruen* to demonstrate that silencers are presumptively protected by the Second Amendment, California's prohibition is consistent with "the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19.  In conducting this "analogical inquiry"—at step two of the *Bruen* framework—a prior regulation identified by the government "must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 29-30). Modern laws that are "relevantly similar" to historical regulations, in the sense that they "impose a comparable burden on the right of armed self-defense" that "is comparably justified," are constitutional.  *Bruen*, 597 U.S. at 29.

California's statutory ban on silencers fits well within the Nation's regulatory tradition.  The colonial and early state governments, for instance, imposed comparable regulations on firearms hardware, accessories, and specific weapons configurations deemed to pose threats to public safety.[2]  Such regulations and

---

[2] In 1771, New Jersey prohibited the keeping of firearms configured as trap guns, which used string or wire so that a loaded firearm would discharge automatically when a trap was sprung.  *See* 1763-1775 N.J. Laws 346, ch. 539, § 10 ("Penalty for setting loaded Guns").  That "most dangerous" (*id.*) weapon configuration "[i]nevitably ... wound up hurting or killing innocent[]" bystanders

(continued…)

outright bans continued into the antebellum and postbellum period, around the time that the Fourteenth Amendment was ratified. State governments banned the carry and possession on certain "melee weapons" that threatened the public safety due to their unique dangerousness. *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.* (*DSSA*), 664 F. Supp. 3d 584, 600-01 (D. Del. 2023). This included bans on slungshots (hand-held impact weapons with a weighted object at the end of a flexible strap),[3] as well as bans on various "fighting knives."[4] And bans on uniquely dangerous items persisted into the twentieth century, including specific bans on silencers, which the historical record indicates were viewed as particularly dangerous from the outset of their invention.[5] This continuous chain of historical analogues, even if not "identical" to California's law, flow from the long-understood, "common sense" principle (*Rahimi*, 144 S. Ct. at 1901) that states

---

who set off the trap. Robert J. Spitzer, *Understanding Gun Law History After Bruen: Moving Forward by Looking Back*, 51 Fordham Urb. L.J. 57, 101 (2023).

[3] *See* 1849 N.Y. Laws 403-404, ch. 278, §§ 1-2; 1849 Vt. Acts & Resolves 26, No. 36, §§ 1-2; 1850 Mass. Gen. Stat. ch. 194, § 2; 1855 Ky. Acts 96, ch. 636, § 1; 1868 Fla. Stat., ch. 1637, *reprinted in* Blount et al., The Revised Statutes of the State of Florida 783, tit. 2, art. 5, § 2425 (1892); 1877 N.D. Laws 794, § 455; 1881 Ill. Laws 73, § 1.

[4] *See* 1837 Ga. Acts 90, § 1; 1837-1838 Tenn. Pub. Act 200, ch. 137, § 1; 1837 Ala. Acts 7, No. 11, § 2; *see also DSSA*, 664 F. Supp. 3d at 601-02. (Bowie knife regulations were "extensive and ubiquitous" after such knives "proliferated in civil society" (internal quotation marks omitted)).

[5] *See* 1909 Me. L., ch. 129, p. 141; 1912 Vt. Acts & Resolves, No. 237, p. 310; 1913 Minn. L., ch. 64, p. 55; 1927 Mich. Pub. Acts, No. 372, pp. 888-89; 1927 R.I. Pub. L., ch. 1052, p. 259; 1933 Cal. Stat., ch. 39, pp. 329-30.

may prohibit items that pose a heightened danger to society, so long as weapons commonly used for self-defense remain available.

Accordingly, at all phases of the *Bruen* analysis, Plaintiff fails to establish that California's ban on possession of silencers violates the Second Amendment.

## CONCLUSION

The Court should deny Plaintiff's motion for an injunction pending appeal.

Dated:  September 30, 2024          Respectfully submitted,

                                             /s/ Kevin L. Quade

                                             ROB BONTA
                                             *Attorney General of California*
                                             THOMAS S. PATTERSON
                                             *Senior Assistant Attorney General*
                                             R. MATTHEW WISE
                                             *Supervising Deputy Attorney General*
                                             KEVIN L. QUADE
                                             *Deputy Attorney General*
                                             *Attorneys for Defendant and Appellee*

## STATEMENT OF RELATED CASES

The State is not aware of any related cases, as defined by Ninth Circuit Rule 28-2.6, that are currently pending in this Court and are not already consolidated here.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)**  24-5566

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[   ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**
[ X ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

Gary R. Sanchez
5941 Rio Valle Dr.
Bonsall, CA 92003
In pro per

**Description of Document(s)** *(required for all documents)***:**

**DEFENDANT-APPELLEE'S OPPOSITION TO PLAINTIFF-APPELLANT'S MOTION FOR INJUNCTION PENDING APPEAL**

**Signature**  /s/ Kevin L. Quade          **Date**  9/30/24

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  24-5566

I am the attorney or self-represented party.

**This brief contains**  3,738  **words,** including  0  words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [        ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  s/ Kevin L. Quade  **Date**  9/30/24
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*