**No. 24-5566**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

GARY R. SANCHEZ,

*Plaintiff-Appellant*,

v.

ROB BONTA, In His Official Capacity As
Attorney General Of The State Of California,

*Defendant-Appellee.*

---

Appeal from the Southern District of California
Civil Case No. 3:24-cv-00767-RSH-MSB
The Honorable Robert S. Huie, District Judge

---

**BRIEF OF FIREARMS REGULATORY ACCOUNTABILITY
COALITION, INC., SILENCER SHOP, B&T USA, LLC, PALMETTO
STATE ARMORY, LLC, AND SB TACTICAL AS *AMICI CURIAE* IN
SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL**

---

Jeremy J. Broggi
 *Counsel of Record*
Stephen J. Obermeier
Michael D. Faucette
Boyd Garriott
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000
JBroggi@wiley.law

April 4, 2025

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amici curiae* certify the following:

*Amicus Curiae* B&T USA, LLC ("B&T") has no parent corporation, and no publicly held company has any ownership interest in B&T.

*Amicus Curiae* Firearms Regulatory Accountability Coalition, Inc. ("FRAC") has no parent corporation, and no publicly held company has any ownership interest in FRAC.

*Amicus Curiae* Hill Country Class 3, LLC d/b/a Silencer Shop ("Silencer Shop") has no parent corporation, and no publicly held company has any ownership interest in Silencer Shop.

*Amicus Curiae* NST Global, LLC d/b/a SB Tactical ("SB Tactical") has no parent corporation, and no publicly held company has any ownership interest in SB Tactical.

*Amicus Curiae* Palmetto State Armory, LLC is wholly owned by JJE Capital Holdings, LLC, a holding company.  No publicly held company has any ownership interest in JJE Capital Holdings, LLC.

Dated: April 4, 2025          */s/ Jeremy J. Broggi*
                              Jeremy J. Broggi
                              *Counsel of Record for* Amici Curiae

i

# TABLE OF CONTENTS

Rule 26.1 Corporate Disclosure Statement ................................................... i

Table of Authorities ................................................................................. iii

Introduction And Interest Of *Amici Curiae* ............................................... 1

Argument ................................................................................................... 3

    I.    The Second Amendment Protects Suppressors Because They Facilitate Lawful Armed Conduct ................................................................... 3

    II.   The Decision Below Threatens To Undermine The Second Amendment's Protections Through Piecemeal Regulation. ................. 9

Conclusion ............................................................................................... 16

Certificate of Service

Form 8: Certificate of Compliance

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. State*,
  50 Tenn. 165 (1871)................................................................7

*B & L Productions, Inc. v. Newsom*,
  104 F.4th 108 (9th Cir. 2024) .................................................6

*Caetano v. Massachusetts*,
  577 U.S. 411 (2016)..............................................................15

*District of Columbia v. Heller*,
  554 U.S. 570 (2008)..............................................2, 3, 4, 6, 7, 14

*Duncan v. Bonta*,
  ___ F.4th ____, 2025 WL 867583 (9th Cir. Mar. 20, 2025)..........8, 9, 11, 13, 15

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) .................................................7

*Firearms Regulatory Accountability Coalition, Inc. v. Garland*,
  112 F.4th 507 (8th Cir. 2024) ...........................................1, 14

*Hanson v. District of Columbia*,
  671 F. Supp. 3d 1 (D.D.C. 2023).........................................12

*Luis v. United States*,
  578 U.S. 5 (2016)....................................................................6

*Mock v. Garland*,
  75 F.4th 563 (5th Cir. 2023) .......................................7, 10, 14

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
  597 U.S. 1 (2022).....................................................2, 4, 6, 7, 9, 15

*Ocean State Tactical, LLC v. Rhode Island*,
  646 F. Supp. 3d 368 (D.R.I. 2022) ......................................12

*Thomas v. County of Humboldt, California*,
  124 F.4th 1179 (9th Cir. 2024) .............................................5

*United States v. Berger*,
    715 F. Supp. 3d 676 (E.D. Pa. 2024)................................................................13

*United States v. Comeaux*,
    2024 WL 115929 (W.D. La. Jan. 10, 2024) ............................................7, 9, 12

*United States v. Miller*,
    307 U.S. 174 (1939)................................................................................................3

*Wrenn v. District of Columbia*,
    864 F.3d 650 (D.C. Cir. 2017)............................................................................15

**Constitutional Provisions**

U.S. Const. amend II ................................................................................................3

**Executive Materials**

ATF, Firearm Types Recovered and Traced in the United States and
    Territories (2023), *available for download at*
    https://tinyurl.com/9nyde3w6 ................................................................................5

ATF, Firearms Commerce in the United States: Annual Statistical
    Update 2021 (May 2021), https://tinyurl.com/2zavsan8 ......................................4

Ronald Turk, Associate Deputy Director (Chief Operating Officer),
    ATF, *Options to Reduce or Modify Firearms Regulations* (Jan. 20,
    2017), https://tinyurl.com/2acppvjr .......................................................................5

U.S. Dep't of Army, Report R-1896, Silencers: Principles and
    Evaluations (Aug. 1968)........................................................................................4

**Other Authorities**

*590 Shockwave*, Mossberg, https://tinyurl.com/yc26sv5u......................................12

Brad Miller, *Who Needs a Barrel?*, Guns Magazine (2022),
    https://tinyurl.com/6c9f77b6 ...............................................................................11

Encyclopedia Britannica ........................................................................................10

*Gun Barrels: How Do They Work?*, NRA Family (Oct. 4, 2017),
    https://tinyurl.com/428jjbrm ................................................................................11

*Gun Sights 101: Iron Sights, Pt. 1*, NRA Family (Apr. 28, 2023),
    https://tinyurl.com/bdh8pnrh ................................................................10

Merriam-Webster's Dictionary ....................................................9, 10

*Owner Study*, NSSF (2025), https://perma.cc/Q893-JMJT .......................5

Second Lieutenant Travis R. Stevens-White,
    *Applying Combatant Status Under the International Law of Armed*
    *Conflict to the Domestic Militia System of the United States*,
    225 Mil. L. Rev. 486 (2017) ..............................................................3

Stephen P. Halbrook, *Firearm Sound Moderators:*
    *Issues of Criminalization and the Second Amendment*,
    46 Cumb. L. Rev. 33 (2015) ....................................................4, 7, 14

*The Truth About Integral Suppressors*, Thril (June 14, 2018),
    https://tinyurl.com/5f8waujc...........................................................11

## INTRODUCTION AND INTEREST OF *AMICI CURIAE*[1]

*Amicus curiae* Firearms Regulatory Accountability Coalition ("FRAC") serves as the premiere national trade association representing U.S. and international firearms manufacturers, importers, and innovators on regulatory and legislative issues impacting the industry in the United States. *Amici curiae* Silencer Shop, B&T USA, Palmetto State Armory, and SB Tactical are companies that design, manufacture, and sell firearms and firearms accessories—including suppressors.

FRAC regularly sues to vindicate its members' interests when the Government oversteps its authority to regulate firearms and firearms accessories. *See, e.g.*, *FRAC v. Garland*, 112 F.4th 507 (8th Cir. 2024) (holding firearms regulation unlawful). And FRAC and its members often file *amicus* briefs in cases, like this one, that challenge the Government's unlawful regulation of firearms and firearms accessories. *See, e.g.*, *United States v. Peterson*, No. 24-30043, Doc. 101-2 (5th Cir.) (filed Mar. 13, 2025) (suppressors); *Garland v. Cargill*, No. 22-976 (U.S.) (filed Jan. 29, 2024) (bump stocks).

This case is important to FRAC, the *amici* companies, and the entire firearms industry. The court below held that firearms "accessories" are not protected by the

---

[1] All parties have consented to the filing of this brief. No counsel for any party authored this brief in whole or in part. No entity or person, aside from *amici curiae*, their members, or their counsel, made any monetary contribution intended to fund the preparation or submission of the brief. *See* Fed. R. App. P. 29(a)(4)(E).

1

Second Amendment because they are "unnecessary to the essential operation of a firearm." 1-SER-008. Although the particular firearms accessory at issue in this case is a suppressor—a device that reduces the noise made by the discharge of a firearm—the district court's holding purports to apply to firearms accessories generally. FRAC members, as well as the companies participating here as *amici*, manufacture and sell firearms and firearms accessories—including suppressors. The district court's opinion threatens to wrongly remove their products and customers from the protections of the Second Amendment. *Amici* thus have a significant interest in this case.

The lower court's Second Amendment holding conflicts with Supreme Court and Ninth Circuit precedent and threatens to dramatically reduce the Second Amendment right to "keep and bear Arms." The Supreme Court defines "Arms" to include all "modern instruments that facilitate armed self-defense," *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 28 (2022), as well as other lawful armed conduct including "hunting" and service in "the militia," *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008). The district court's narrower, strict-necessity test would allow the Government to outlaw nearly every firearm component—for example, sights, barrels, shoulder stocks, and magazines—because, while important to the ordinary operation of a firearms, these parts are not strictly "necessary" to the

2

"essential operation" of a firearm. This view of the Second Amendment would render it vulnerable to death by a thousand cuts.

For these reasons, *amici* respectfully urge the Court to reverse the district court's erroneous holding that a flat ban on suppressors does not even *implicate* the Second Amendment.

## ARGUMENT

### I. THE SECOND AMENDMENT PROTECTS SUPPRESSORS BECAUSE THEY FACILITATE LAWFUL ARMED CONDUCT.

The Second Amendment guarantees the right of every American to "keep and bear Arms." U.S. Const. amend II. One "purpose" for the Amendment's adoption was "to prevent elimination of the militia." *Heller*, 554 U.S. at 599.[2] But that was not "the only reason Americans valued the ancient right"; they also deemed it critically "important for self-defense and hunting." *Ibid.* The right was thus not just an end in itself but also a means to protect all forms of lawful armed conduct.

The Supreme Court has held that the "Arms" protected by the Second Amendment are any instruments that facilitate this lawful conduct. In *Heller*, the Supreme Court explained that "Arms" include not only "weapons of offence," but also "any thing that a man … takes into his hands, or useth in wrath to cast at or

---

[2] *See also United States v. Miller*, 307 U.S. 174, 178-79 (1939); Second Lieutenant Travis R. Stevens-White, *Applying Combatant Status Under the International Law of Armed Conflict to the Domestic Militia System of the United States*, 225 Mil. L. Rev. 486, 488-90 (2017).

strike another." *Heller*, 554 U.S. at 581. Expanding on this capacious definition, the Supreme Court in *Bruen* explained that "even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers *modern instruments that facilitate armed self-defense*." *Bruen*, 597 U.S. at 28 (emphasis added).

"Arms" thus encompass firearms accessories like suppressors that exist to facilitate lawful armed conduct. Suppressors "[r]educe[ ] noise and recoil," which protects "hearing," avoids unnecessary "disturbance," and prevents "frighten[ing] [game] away" during hunting. *See* Stephen P. Halbrook, *Firearm Sound Moderators: Issues of Criminalization and the Second Amendment*, 46 Cumb. L. Rev. 33, 41-43 (2015); *see also* 1-SER-006-007.[3] Suppressors also reduce the need for "earplugs and earmuffs," which "can cause accidents" by "inhibit[ing] one's ability to hear range commands," and can also impede important environmental noise (e.g., a game animal or an intruder in one's home). Halbrook, *supra*, 46 Cumb. L. Rev. at 34.

These benefits have made suppressors ubiquitous. Americans legally registered more than *2.6 million* suppressors as of 2021. ATF, Firearms Commerce in the United States: Annual Statistical Update 2021, at 16 (May 2021),

---

[3] *See also* U.S. Dep't of Army, Report R-1896, Silencers: Principles and Evaluations 1 (Aug. 1968) (explaining that suppressors improve "aim" and reduce the "ear shattering effects" of firearms).

https://tinyurl.com/2zavsan8.  And that number nearly *doubled* by the end of 2024. *See Owner Study*, NSSF, at 7 (2025) (recording "4.5 million … at [e]nd of 2024"), https://perma.cc/Q893-JMJT; Appellant's Br. 6.

Further, federal crime data shows suppressors "are very rarely used in" crimes.  Ronald Turk, Associate Deputy Director (Chief Operating Officer), ATF, *Options to Reduce or Modify Firearms Regulations*, at 6-7 (Jan. 20, 2017) ("On average in the past 10 years, ATF has only recommended 44 defendants a year for prosecution on silencer-related violations; of those, only approximately 6 of the defendants had prior felony convictions."), https://tinyurl.com/2acppvjr.  In 2023, ATF reported recovering and tracing a mere 406 silencers out of more than *500,000 weapons* implicated in investigations across the country.  ATF, Firearm Types Recovered and Traced in the United States and Territories (2023), *available for download at* https://tinyurl.com/9nyde3w6.  That is dwarfed by the 378,043 pistols traced and recovered during that same period.  *Ibid.*

As Appellant explains (at 5-9, 27-33), the beneficial and overwhelmingly lawful use of suppressors is well-documented and beyond dispute—particularly where, as here, "all allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiffs."  *Thomas v. Cnty. of Humboldt, California*, 124 F.4th 1179, 1186 (9th Cir. 2024) (cleaned up) (reversing district

court's dismissal); *accord* 2-SER-025 (alleging in complaint that suppressors are "overwhelmingly used by law abiding citizens for lawful purposes").

Even the district court did not dispute that suppressors are "desirable" because they "reduc[e] noise, flash, [and] recoil" and "improv[e] marksmanship." 1-SER-007-008. Although the district court resisted the conclusion that should have followed from that uncontested factual premise, its observation confirms that suppressors are entitled to Second Amendment protection. Because suppressors are lawfully used "to cast at or strike another," *Heller*, 554 U.S. at 581, and to "facilitate armed self-defense" and for other lawful purposes, *Bruen*, 597 U.S. at 28, they are protected "Arms."[4]

The possession of suppressors is also protected as Second Amendment "conduct." *Bruen*, 597 U.S. at 24; *accord Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring) ("Constitutional rights … implicitly protect those closely related acts necessary to their exercise."). This "court has consistently held that the Second Amendment … protects ancillary rights necessary to the realization of the core right to possess a firearm." *B & L Prods., Inc. v. Newsom*, 104 F.4th 108, 118 (9th Cir. 2024) (quotations omitted). Those ancillary rights include, for example, protections for conduct such as "the right to *acquire* firearms." *Ibid.*

---

[4] Of course, Arms may be more heavily regulated if they are "dangerous and unusual." *Bruen*, 597 U.S. at 21. Although the lower court did not reach the issue, silencers are neither. *See supra.*

(emphasis in original). Protected conduct also includes the right to "keep [Arms] in a state of efficiency for use … for all the ordinary purposes" of law-abiding citizens. *Andrews v. State*, 50 Tenn. 165, 178 (1871).

Possessing firearms accessories is protected Second Amendment conduct where the accessory facilitates the right to keep and bear arms by making weapons more effective and "easier to use" for lawful purposes. *Heller*, 554 U.S. at 629. That is because the use of suppressors for such purposes "facilitate[s] armed" lawful conduct, *Bruen*, 597 U.S. at 28, and is a "common, safety-improving modification[ ]," *Mock v. Garland*, 75 F.4th 563, 588 (5th Cir. 2023) (Willet, J., concurring); *see United States v. Comeaux*, 2024 WL 115929, at *2 n.1 (W.D. La. Jan. 10, 2024) (explaining that suppressors "significantly alter[ ] an important and defining characteristic of th[e] firearm").

Further, because a "*single shot* from a large caliber firearm, experienced at close range, may *permanently damage* your hearing," Halbrook, *supra*, 46 Cumb. L. Rev. at 33 (emphasis added) (quoting Dr. Brian J. Fligor of Harvard Medical School), suppressors facilitate safe, repeated firing that allows "law-abiding people to maintain proficiency in firearm use via marksmanship practice," *Ezell v. City of Chicago*, 651 F.3d 684, 695 (7th Cir. 2011). Thus, not only are suppressors "Arms," but possessing a suppressor is protected Second Amendment conduct.

This Court's recent decision in *Duncan v. Bonta*, ___ F.4th ____, 2025 WL 867583 (9th Cir. Mar. 20, 2025) (en banc), confirms that suppressors are protected by the Second Amendment.[5]    *Duncan* found unprotected "a *large-capacity* magazine," *id.* at *9 (emphasis in original), but expressly recognized that the Second Amendment protects "accessories that are necessary for the ordinary operation of a protected weapon," *ibid.*   So, the Court explained, although "*large-capacity* magazine[s]" fall outside the Second Amendment's protection, the Amendment *does* protect the "right to possess *a magazine* … just as it protects the right to possess ammunition and triggers." *Ibid.* (emphasis added).

Under *Duncan*, suppressors are analogous to protected standard magazines, rather than unprotected large-capacity magazines.   Suppressors, like standard magazines, are "necessary for the ordinary operation of a protected weapon." *Ibid.* Namely, they allow the user to safely fire the gun and more effectively use it for lawful purposes. *See supra*; *see also* Appellant's Br. 5-9, 27-33.  And unlike a large-capacity magazine—which arguably performs the same function as an ordinary magazine—a suppressor offers independent utility that is not additive of a more standard component.   At bottom, "the firearm silencer *significantly alters an important and defining characteristic* of th[e] firearm by greatly lessening the noise

---

[5] *Amici*, like Appellant, do "not concede that *Duncan* was correctly decided" but instead note that Appellant "should still prevail even under" that opinion's Second Amendment analysis.  *See* Appellant's Br. 16.

8

emitted when discharged." *Comeaux*, 2024 WL 115929, at *2 n.1 (emphasis added); *compare with Duncan*, ___ F.4th at ____, 2025 WL 867583, at *9 ("The large capacity of the magazine plays no role in the firing mechanism of the firearm.").

Thus, suppressors are "Arms," and the possession of suppressors is protected Second Amendment conduct.

## II. THE DECISION BELOW THREATENS TO UNDERMINE THE SECOND AMENDMENT'S PROTECTIONS THROUGH PIECEMEAL REGULATION.

The lower court erred because it fashioned a more restrictive understanding of "Arms" than the one articulated by the Supreme Court and this Court. It held that instruments qualify as "Arms" only when they are "[ ]*necessary* to the *essential operation* of a firearm." 1-SER-008 (emphasis added). The district court did not elaborate on what makes an operation "essential" or what makes an accessory "necessary" to such operations. *See id.*

That test is erroneous. It excludes instruments that "facilitate armed" lawful conduct, *Bruen*, 597 U.S. at 28, contrary to Supreme Court precedent. And by limiting Second Amendment protections to only accessories that facilitate "*essential*" firearm operations, 1-SER-008 (emphasis added), the district court's test sweeps more narrowly than this Court's protections for accessories that facilitate "the *ordinary* operation of" a firearm, *Duncan*, ___ F.4th at ____, 2025 WL 867583, at *9 (emphasis added). After all, "ordinary" firearm operations include those that are "common" and "to be expected" of a firearm, *see Ordinary*, Merriam-Webster,

9

https://tinyurl.com/yfz2txay (last visited Apr. 4, 2025), such as those that make the firearm safe and accurate. These ordinary functions plainly sweep more broadly than the "essential operation" of a firearm, which is presumably limited to firing. *See Essential*, Merriam-Webster, https://tinyurl.com/mpfydu3r (last visited Apr. 4, 2025) ("indispensable, necessary").

The district court's circumscribed test would render the Second Amendment vulnerable to death by a thousand cuts. After all, firearms operate as systems of parts. Those parts are integrated into a cohesive whole that allows a user to safely and effectively fire the weapon. Although any given individual component may not be literally "necessary" for the weapon's "essential" operation, that does not make it less of an "Arm." To hold otherwise would allow the Government to use piecemeal component regulations to retroactively ban, and prospectively dictate, the firearms available to the public—all without constitutional limit. Such a test would render the Second Amendment a nullity.

Common examples illustrate the point. First, consider sights—"optical devices that aid in aiming a firearm." *Gunsight*, Encyclopedia Britannica, https://tinyurl.com/nhhsjwym (last visited Apr. 4, 2025). By "align[ing]" a "target [with] the shooter's eye to produce repeatable hits," sights greatly increase accuracy. *Gun Sights 101: Iron Sights, Pt. 1*, NRA Family (Apr. 28, 2023), https://tinyurl.com/bdh8pnrh. "Accuracy, in turn, promotes safety." *Mock*, 75 F.4th

10

at 588 (Willett, J., concurring).  However, a sight is not "a weapon in itself."  *See* 1-SER-008.  And sights are "not strictly necessary to make the gun fire a round." *Duncan*, ___ F.4th at ____, 2025 WL 867583, at *50 (VanDyke, J., dissenting) ("Some handguns come without any sights at all.").  Thus, under the district court's holding, sights "are … outside the scope of the Second Amendment's protection," and could be criminalized without limit.  *See* 1-SER-006.

Next, consider barrels.  Virtually every firearm uses a barrel—and for good reason: "In rifles and handguns, the barrel is the single most important factor in determining accuracy."  *Gun Barrels: How Do They Work?*, NRA Family (Oct. 4, 2017),  https://tinyurl.com/428jjbrm.    However,  guns  "can  fire  even  with  no barrel"—albeit  with  adverse  impacts  on  accuracy.   Brad  Miller,  *Who  Needs  a Barrel?*, Guns Magazine (2022), https://tinyurl.com/6c9f77b6.  Thus, a barrel "is an accessory that is not necessary to the operation of a firearm."  *See* 1-SER-006.  So, under the district court's reading, the Government could ban barrels, and the Second Amendment would have no role to play.  And it is no fanciful leap from suppressors to  barrels:   some  firearms  are  manufactured  with  integral  suppressors  that  are manufactured  as  part  and  parcel  of  the  barrel.   *See  The  Truth  About  Integral Suppressors*, Thril (June 14, 2018), https://tinyurl.com/5f8waujc.

It is the same with shoulder stocks.  Most long guns—think shotguns and rifles—utilize shoulder stocks.  The reason is simple:  the stock allows the user to

11

more safely and effectively fire larger-caliber ammunition by absorbing the recoil in his shoulder. However, it is possible to operate such guns without stocks. Indeed, there are firearms on the market that shoot shotgun shells without shoulder stocks. *See, e.g.*, *590 Shockwave*, Mossberg, https://tinyurl.com/yc26sv5u. Thus, again, under the district court's opinion, stocks would not be entitled to any Second Amendment protections.

These examples are not merely hypothetical. Another district court that employed a strict-necessity test similar to the court below held that "detachable magazines" are not "Arms" because "a firearm can fire bullets without" them. *Ocean State Tactical, LLC v. Rhode Island*, 646 F. Supp. 3d 368, 386-88 (D.R.I. 2022). But, as other courts have correctly recognized, that flawed "logic … would allow [the Government] to ban *all* magazines … because a firearm technically does not require *any* magazine to operate; one could simply fire the single bullet in the firearm's chamber." *Hanson v. District of Columbia*, 671 F. Supp. 3d 1, 10 (D.D.C. 2023) (emphases in original), *aff'd*, 120 F.4th 223 (D.C. Cir. 2024). Thus, under the panel's mistaken reasoning, the Government could limit firearm ownership to single-shot weapons—eviscerating much of the firearm market in America today—without even *implicating* the Second Amendment.[6] That runs afoul of a mountain

---

[6] *See also, e.g.*, *Comeaux*, 2024 WL 115929, at *2 n.1 (declining to "limit the scope of the Second Amendment's protections" through interpretation of "Arms" that

of precedent, including this Court's holding in *Duncan* that "the Second Amendment's text necessarily encompasses the corollary right to possess a magazine for firearms that require one." *Duncan*, ___ F.4th at ____, 2025 WL 867583, at *9.

These examples show that the district court's opinion cannot be correct. Indeed, stripping a rifle of all parts that are not strictly necessary to its essential operation would "leav[e] Americans to shoot the sort of ridiculous contraption pictured below:"



Brief of *Amici Curiae*, Gun Owners of America, Inc., et al., *United States v. Peterson*, No. 24-30043, 2025 WL 929517, at *12 (5th Cir.) (filed Mar. 13, 2025). Surely such a serious infringement on the right to private firearm ownership must at least *implicate* the Second Amendment.

Further, the district court's test also would give the Government authority to turn millions of law-abiding gun owners into felons overnight. That is because if the Government is free to criminalize sights, barrels, stocks, and magazines, then it

---

"could exclude grips, sights, stocks, and other parts of a firearm from Second Amendment protection"); *United States v. Berger*, 715 F. Supp. 3d 676, 702 (E.D. Pa. 2024) (agreeing that similar strict-necessity test excludes "grips, stocks, optics, [large] magazines, and barrel attachments").

could make it illegal to own virtually every firearm in the country without constitutional scrutiny. Indeed, ATF has previously tried to backdoor firearm bans through accessory regulations. In 2023, it tried to impose regulations on pistol stabilizing braces—a popular firearms accessory—to retroactively criminalize *millions* of unregistered "pistol-brace-equipped firearms." *Mock*, 75 F.4th at 576, 581-82 (observing "low estimate" of "3 million firearms" affected). Although multiple courts of appeals blocked ATF's unlawful effort, *see, e.g.*, *id.* at 588; *FRAC*, 112 F.4th at 526, this saga shows that the Government is willing to regulate *accessories* as a means to retroactively outlaw *firearms* owned by millions of law-abiding Americans. Again, surely the Second Amendment has a role to play in protecting gunowners from such efforts.

Further, giving the Government free rein to regulate each individual piece of a firearm effectively gives it the ability to prospectively dictate the weapons available to the public. For example, a ban on long barrels—which are not necessary to fire a gun—would, for all practical purposes, limit the market to handguns. *Cf.* Halbrook, *supra*, 46 Cumb. L. Rev. at 69 ("Could Congress ban firearms with longer barrels because they make less noise, and require shorter barrels because they are louder?"). Yet that would run afoul of the Supreme Court's teaching that the Government generally may not "ban the possession of [one type of gun] so long as the possession of other firearms … is allowed." *Heller*, 554 U.S. at 629; *see also*

14

*Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito, Thomas, JJ., concurring) (rejecting interpretation that would leave "a State … free to ban all weapons except" those it prefers (emphasis omitted)).

It would be no answer to claim that accessories like sights, barrels, stocks, and magazines are protected because they have more *utility* than suppressors.  For one, that view gives short thrift to the numerous benefits of suppressors.  *See supra* Section I.  But even more fundamentally, courts applying such a test would be engaged in the kind of "judge-empowering 'interest-balancing inquiry'" that the Supreme Court has expressly rejected in the Second Amendment context.  *Bruen*, 597 U.S. at 22; *see also Wrenn v. District of Columbia*, 864 F.3d 650, 664 (D.C. Cir. 2017) ("the *Heller* Court … dispensed with tiers of scrutiny in striking down a ban on possession").  Just as courts may not "decide on a case-by-case basis whether the right is *really worth* insisting upon," *Bruen*, 597 U.S. at 23 (emphasis in original), neither may courts ask whether a firearm component is *really necessary* enough to warrant Second Amendment protection.  Indeed, that is why this Court assesses whether an accessory is "necessary for the *ordinary* operation of a protected weapon," *Duncan*, ___ F.4th at ____, 2025 WL 867583, at *9 (emphasis added), granting broad protections that go beyond the "*essential* operation of a firearm," 1-SER-008 (emphasis added).

15

The Court should reverse. Under the proper Second Amendment analysis, suppressors are protected Arms, and possessing suppressors is protected Second Amendment conduct.

## CONCLUSION

In light of the foregoing, this Court should reverse.

Dated: April 4, 2025                                 Respectfully submitted,

                                                     */s/ Jeremy J. Broggi*
                                                     Jeremy J. Broggi
                                                       *Counsel of Record*
                                                     Stephen J. Obermeier
                                                     Michael D. Faucette
                                                     Boyd Garriott
                                                     **WILEY REIN LLP**
                                                     2050 M Street NW
                                                     Washington, DC 20036
                                                     (202) 719-7000
                                                     JBroggi@wiley.law

                                                     *Counsel for* Amici Curiae

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system, which will transmit the foregoing document via email to all counsel of record.

Dated: April 4, 2025

*/s/ Jeremy J. Broggi*
Jeremy J. Broggi
*Counsel of Record for* Amici Curiae

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  | 24-5566 |

I am the attorney or self-represented party.

**This brief contains** | 3,455 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [      ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Jeremy J. Broggi |  **Date** | April 4, 2025 |

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*