No. 24-5566

In the
**United States Court of Appeals for the Ninth Circuit**

———————

GARY R. SANCHEZ,
*Plaintiff-Appellant*,
v.
ROB BONTA, in his official capacity as
Attorney General of the State of California,
*Defendant-Appellee.*

———————

On Appeal from the United States District Court
for the Southern District of California

———————

Brief *Amicus Curiae* of
Gun Owners of California, Inc.
Tennessee Firearms Association, Tennessee Firearms Foundation,
America's Future,
United States Constitutional Rights Legal Defense Fund, and
Conservative Legal Defense and Education Fund
in Support of Plaintiff-Appellant and Reversal

———————

JOHN I. HARRIS III
  SCHULMAN, LEROY & BENNETT, P.C.
  3310 West End Avenue
  Suite 460
  Nashville, TN 37203

*Attorneys for Amici Curiae*
April 4, 2025

JEREMIAH L. MORGAN*
WILLIAM J. OLSON
ROBERT J. OLSON
  WILLIAM J. OLSON, P.C.
  370 Maple Avenue W., Suite 4
  Vienna, VA 22180-5615
  (703) 356-5070
*Attorney of Record

## DISCLOSURE STATEMENT

The *amici curiae* herein, Gun Owners of California, Inc., Tennessee

Firearms Association, Tennessee Firearms Foundation, America's Future, United

States Constitutional Rights Legal Defense Fund, and Conservative Legal Defense

and Education Fund, through their undersigned counsel, submit this Disclosure

Statement pursuant to Federal Rules of Appellate Procedure 26.1, 29(c).

All of these *amici curiae* are non-stock, nonprofit corporations, none of

which has any parent company, and no person or entity owns them or any part of

them.  The *amici curiae* are represented herein by Jeremiah L. Morgan, who is

counsel of record, William J. Olson, and Robert J. Olson of William J. Olson,

P.C., 370 Maple Avenue West, Suite 4, Vienna, Virginia 22180-5615, and John I.

Harris III, of Schulman, Leroy & Bennett, P.C., 3310 West End Avenue, Suite

460, Nashville, Tennessee 37203.

_____*s/Jeremiah L. Morgan*_____
Jeremiah L. Morgan

i

## TABLE OF CONTENTS

<u>Page</u>

DISCLOSURE STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

INTEREST OF *AMICI CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT

I.     THE DISTRICT COURT DETERMINED SUPPRESSORS WERE NOT ARMS
       WITHOUT ANY MEANINGFUL ANALYSIS, SUPPORTED ONLY BY A STRING
       CITE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.    SUPPRESSORS ARE "ARMS" UNDER THE SECOND AMENDMENT . . . . . . . . 11

III.   THE SECOND AMENDMENT'S PREFATORY CLAUSE CONFIRMS AN
       EXPANSIVE MEANING OF "ARMS" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.   BECAUSE THE SECOND AMENDMENT PROTECTS ORDINARY MILITARY
       EQUIPMENT, IT MUST PROTECT SUPPRESSORS. . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ii

# TABLE OF AUTHORITIES

Constitution
Amendment II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, *passim*

Statutes
California Penal Code § 17210 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
California Penal Code § 33410 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4
National Firearms Act, 26 U.S.C. § 5841 . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Cases
*Aymette v. State*, 21 Tenn. 154 (1840) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Caetano v. Massachusetts,* 577 U.S. 411 (2016) (per curiam) . . . . . . . . . . . . . . . 5
*Capen v. Campbell*, 708 F. Supp. 3d 65 (D. Mass. 2023) . . . . . . . . . . . . . . . . . . . 6
*Cox v. United States*, 2023 U.S. Dist. LEXIS 112596 (D. Alaska 2023) . . . . . . . . 8
*District of Columbia v. Heller*, 554 U.S. 570 (2008). . . . . . . . . . . . . . . . . 3, *passim*
*Duncan v. Bonta*, 695 F. Supp. 3d 1206 (S.D. Cal. 2023). . . . . . . . . . . . . . . . . . 14
*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . 14
*Lynchburg Range & Training, LLC v. Northam*, 105 Va. Cir. 159
     (Lynchburg 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) . . . . . . . . . . . 4, *passim*
*Ocean State Tactical, LLC v. Rhode Island,* 646 F. Supp. 368 (D.R.I. 2022) . . . 18
*State v. Duke*, 42 Tex. 455 (1874) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Teixeira v. Cty. of Alameda*, 873 F.3d 670 (9th Cir. 2017) . . . . . . . . . . . . . . . . . 14
*United States v. Berger*, 715 F. Supp. 3d 676 (E.D. Pa. 2024) . . . . . . . . . . . . 9, 10
*United States v. Cooperman*, 2023 U.S. Dist. LEXIS 129007 (N.D. Ill. 2023) . . . 8
*United States v. Cox,* 906 F.3d 1170 (10th Cir. 2018). . . . . . . . . . . . . . . . . . . 6, 7, 8
*United States v. McCartney*, 357 F. App'x 73 (9th Cir. 2009) . . . . . . . . . . . . . . . 8
*United States v. Miller*, 307 U.S. 174 (1939). . . . . . . . . . . . . . . . . . . . . 12, 14, 16
*United States v. Peterson*, 2023 U.S. Dist. LEXIS 146946 (E.D. La. 2023). . . . . . 8
*United States v. Rahimi*, 602 U.S. 680 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . 17
*United States v. Saleem*, 659 F. Supp. 3d 683 (W.D.N.C. 2023) . . . . . . . . . . . 7, 8
*United States v. Villalobos*, 2023 U.S. Dist. LEXIS 71074 (D. Idaho 2023) . . . 7, 8

Miscellaneous
Thomas Branch, Principia Legis et Aequitatis (4th ed. 1822). . . . . . . . . . . . . . 12
James Frazer, *Delivering Support to Front Lines*, Marines (Mar. 16, 2011) . . . . 16

Matt Gonzales, *Marine Corps Begins Widespread Fielding of Suppressors*, Marines (Dec. 30, 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

A Pennsylvanian, No. 3, Pa. Gazette, Feb. 20, 1788 . . . . . . . . . . . . . . . . . . . . . 11

Barry Snell, Recent Suppressor Registrations Eclipse Numbers for the NFA's First Eight Decades Combined, *Cong. Sportsmen's Found.* (Jan. 6, 2025). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

iv

## INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* Gun Owners of California, Inc., Tennessee Firearms
Association, Tennessee Firearms Foundation, America's Future, United States
Constitutional Rights Legal Defense Fund, and Conservative Legal Defense and
Education Fund are nonstock, not-for-profit organizations, exempt from federal
income taxation under sections 501(c)(3) or 501(c)(4) of the Internal Revenue
Code. These *amici* have filed numerous *amicus* briefs in constitutional and public
policy cases, including one filed by some of them recently in a similar case; *see*
Brief *Amici Curiae* of Gun Owners of America, Inc., et al. in Support of
Defendant-Appellant's Petition for Rehearing En Banc in *United States v.
Peterson*, U.S. Court of Appeals for the Fifth Circuit, No. 24-30043 (Mar. 13,
2025).

## STATEMENT OF THE CASE

In April 2024, Mr. Sanchez applied for federal authorization to legally
fabricate and register a firearm suppressor. However, despite Mr. Sanchez

---

[1] Counsel for the parties have consented to the filing of this brief *amicus curiae*. No party's counsel authored the brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than these *amici curiae*, their members or their counsel contributed money that was intended to fund preparing or submitting this brief.

1

meeting all the requirements under federal law, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") denied his application, citing California's criminal ban on suppressors, enacted at California Penal Code § 33410.

California bans and criminalizes the possession of all suppressors, which are legal to possess under federal law and in the vast majority of States. However, unlike most states, California makes no exception for suppressors used for lawful purposes, such as hearing protection, safety, or improved self-defense capabilities. Rather, California Penal Code § 33410 imposes a flat, indiscriminate criminal ban in California, regardless of purpose, even when suppressors are federally registered under the National Firearms Act ("NFA"), 26 U.S.C. § 5841, *et seq*. Section 33410 states that anyone who "within this state possesses a silencer is guilty of a felony and upon conviction thereof shall be punished by imprisonment ... or by a fine not to exceed ten thousand dollars ... or by both that fine and imprisonment." Cal. Penal Code § 33410. California Penal Code § 17210 defines a "silencer" as "any device or attachment of any kind designed, used, or intended for use in silencing, diminishing, or muffling the report of a firearm," including "any combination of parts, designed or redesigned, and intended for use in assembling a silencer or fabricating a silencer and any part intended only for use in assembly or fabrication of a silencer." *Id.* at § 17210.

2

After Mr. Sanchez's application was denied because of the aforementioned state statutes, he filed a *pro se* complaint for declaratory and injunctive relief, alleging that California's suppressor ban violates the Second and Fourteenth Amendments of the United States Constitution. The district court dismissed Mr. Sanchez's *pro se* complaint, and denied leave to amend, ruling that suppressors do not qualify as "arms" entitled to any Second Amendment protection whatsoever.

## SUMMARY OF ARGUMENT

Mr. Sanchez, a member of "the People," seeks to possess a suppressor for lawful purposes, including for self-defense within his home — where the U.S. Supreme Court has said that "the need for defense of self, family, and property is most acute." *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008). However, California Penal Code § 33410 criminalizes the possession of any suppressor, even if registered under the NFA.

The district court readily acknowledged that firearm suppressors have qualities that make them particularly "desirable" for home defense — they "reduc[e] noise, flash, [and] recoil," all of which can deafen, disorient, and temporarily blind those who operate firearms defensively in enclosed spaces. *See Sanchez* at *6. Thus, a firearm suppressor certainly constitutes what the U.S. Supreme Court called a "modern instrument[] that facilitate[s] armed self-

3

defense." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 28 (2022). And under that "general definition," *id.*, such an instrument would be an "arm" protected under the Second Amendment's plain text, and to criminalize its simple possession would be "invalid." *Heller* at 629. For these reasons, California's law outright criminalizing suppressor ownership should be invalidated as a clear violation of the Second Amendment.

To uphold § 33410's suppressor ban, the district court conducted almost no analysis, only citing to other court opinions, before asserting that the Second Amendment does not protect — *at the outset* — suppressors, or any "accessory **unnecessary** to the essential operation of a firearm." *Sanchez* at *6 (emphasis added). This "necessary" test is based on a restrictive interpretation of the term "arm," with no basis in the text of the Second Amendment or its history. The district court misreads some Supreme Court precedents and ignores others entirely — including the language set out in *Bruen* about a "modern instrument[] that facilitate[s] armed self-defense."

4

## ARGUMENT

### I.  THE DISTRICT COURT DETERMINED SUPPRESSORS WERE NOT ARMS WITHOUT ANY MEANINGFUL ANALYSIS, SUPPORTED ONLY BY A STRING CITE.

The district court determined the threshold issue under *Bruen*, whether a suppressor is an "arm" under the Second Amendment, without any effort to grapple with the historic meaning of "arm" and without any thoughtful analysis, but rather supported only by a string cite.  The following constitutes the totality of the district court's rationale for its decision which California asks this Court to adopt:

> The Court agrees with the conclusion and reasoning of the cases cited above.  A silencer is neither a **weapon** in itself, nor a **defensive armor**.  As Plaintiff concedes, it is an **accessory**.  Nor does Plaintiff dispute that, unlike ammunition, a silencer is an accessory **unnecessary to the essential operation** of a firearm — however desirable the silencer may be to a user in reducing noise, flash, or recoil, or in allowing the user to stay hidden while firing.  The Court concludes that silencers are **not "bearable arms"** for purposes of the Second Amendment.  [*Sanchez* at *6 (citations omitted) (emphasis added).]

Thus, according to the district court, "arms" are only:

• weapons,[2]

_____

[2]  The district court's narrow definition of "weapon" might not even include stun guns sanctioned in *Caetano v. Massachusetts,* 577 U.S. 411 (2016) (per curiam).

5

- defensive armor, or

- something absolutely needed to cause a firearm to discharge a projectile.[3]  *See id.*

It is one thing for a court to cite to the reasoning in thoughtful decisions of courts resolving the same issue.  But the district court entirely outsourced its solemn responsibility to interpret the Constitution to other judges, by simply adopting the holding of, if not the logic behind, a long string cite of any favorable decision it could find, without providing any of the necessary analysis.  *See Sanchez* at *5.

Of the eight cases relied upon by the district court, only one involved a state law imposing a ban, and there the ban was on magazines, and thus the brief reference to silencers was pure dicta.  *See Capen v. Campbell*, 708 F. Supp. 3d 65, 89 (D. Mass. 2023).  The rest of the cited decisions are addressed in chronological order.

The only court of appeals opinion relied on was *United States v. Cox,* 906 F.3d 1170, 1186 (10th Cir. 2018), decided before *Bruen*.  There, the circuit court appeared to concede, but find irrelevant that silencers were in common use, rarely

---

[3]  In some semi-automatic firearms, a round can be chambered and fired without its magazine being in place, so the magazine would not be "necessary" and, according to the district court, this would disqualify a magazine from being an "arm."

6

used to commit crimes, protected the shooter's and bystanders' hearing, and improved accuracy, making them particularly valuable for home defense. Rather, the court based its ruling only on *Heller* having cited to "two dictionaries from the eighteenth, and one from the nineteenth century" containing the same narrow definition adopted by the district court here. *Id*. at 1186. This weakness in the Tenth Circuit's approach to constitutional interpretation should be obvious. The *Heller* case was about the individual right to keep and bear arms, and specifically handguns in the home. *Heller* did not involve delineating the outer bounds of the term "arms," and yet the Tenth Circuit extracted a speck of dicta from *Heller* as conclusively determining the issue. Since *Heller* never attempted to address or resolve the scope of the term "arm," it cannot be seen as having done so. This is no way to interpret the Constitution.

The remaining cases were all district court opinions. The court's opinion in *United States v. Saleem*, 659 F. Supp. 3d 683, 695 (W.D.N.C. 2023) identifies only one argument made by the defendant — that silencers are "used to 'cast[] or strike' a bullet" to fit under one of the dictionary definitions of "arms." *Id*. The court did nothing more than "disagree[]" with the defendant's single assertion. *Id*.

In *United States v. Villalobos*, 2023 U.S. Dist. LEXIS 71074, *26 (D. Idaho 2023), the district court relied on two cases. First, it cited *United States v. Cox*,

7

which relied exclusively on cursory dicta from *Heller*, as discussed *supra*.
Second, it cited the decision of this Court in *United States v. McCartney*, 357 F.
App'x 73, 76 (9th Cir. 2009), an unpublished decision decided before *Bruen* and
based on the demonstrably false assumption that silencers are just like "grenades,
and directional mines" not "'typically possessed by law-abiding citizens for lawful
purposes.'"  This case is readily distinguished.  *See* Replacement Opening Brief of
Plaintiff-Appellant at 21.  The district court here apparently agrees that *McCartney*
provided it no meaningful authority, as it did not even cite to that decision.

     *Cox v. United States*, 2023 U.S. Dist. LEXIS 112596, *19 (D. Alaska 2023),
relied on *McCartney*, *United States v. Cox*, *Villalobos*, and *Saleem*, all refuted
*supra*, before concluding that a silencer "is not necessary for the functioning of the
firearm" — the same false conclusion reached by the district court below.

     *United States v. Cooperman*, 2023 U.S. Dist. LEXIS 129007, *3 (N.D. Ill.
2023), cited only to *Heller*'s reference to dictionaries, discussed *supra*, *United
States v. Cox*, and *Bruen* before asserting that, based on those cases, since
silencers are not weapons, they cannot be "bearable arms."

     *United States v. Peterson*, 2023 U.S. Dist. LEXIS 146946, *3 (E.D. La.
2023), cited only to *Heller* and *United States v. Cox*, addressed *supra*, to deem a
silencer not protected in a few sentences.

8

The most recent case cited by the district court was *United States v. Berger*, 715 F. Supp. 3d 676, 702 (E.D. Pa. 2024), which provided a more extensive analysis of its position than any of the others, and seemed to admit that there was a judgment call being made by it and other courts. *Berger* stated: "if there is a line of demarcation between firearm components entitled to Second Amendment protection as bearable 'arms,' determining which components are necessary to the operation of the firearm appears to constitute a reasonable limitation on the scope of the Second Amendment." *Id*. at 701. The district court seemed to be asserting that the scope of the term "arms" is based on what the court believes to be reasonable, rather than on the meaning of the terms as used in the Constitution. "Otherwise," the court continued, "the Second Amendment covers all components of firearms, such as grips, stocks, optics, extended or special magazines and barrel attachments." *Id*. at 702. The district court does not state why this type of protection of nonessential accessories would be an unacceptable, unreasonable result. After all, the Framers of the Second Amendment decreed that the "right to keep and bear arms" should never "be infringed" in order to preserve the ability of the American People to form into citizen militias to resist the government should it ever again become oppressive, because such an armed populace was absolutely "necessary to the security of a free State." Decisions which make such artificial

9

distinctions in order to enhance the power of the state and to limit the rights of the People are the very type of decisions which causes the People to be less free, and which causes the People to lose faith in federal courts.

One of the other problems of interpretation with respect to silencer cases is that they are generally criminal prosecutions involving, no surprise, criminals. The district courts are loaded with public defenders and other lawyers raising every possible defense to every possible charge, and thus important constitutional issues such as the scope of the Second Amendment can be dealt with in a cursory fashion, as a concession to the mortality of man.  And, as the district court in *Berger* correctly concedes, "the Supreme Court has yet to squarely address the extent of the Second Amendment's protection of firearm components."  *Berger* at 702.  Yet, after *Heller*, *McDonald*, and *Bruen*, the days of federal court judges reflexively swatting down Second Amendment claims in deference to government should be over.  Courts should not just be searching for a dictionary or two which contains an abbreviated definition of the term "arm" to provide a rationale to uphold a state law.

10

## II.    SUPPRESSORS ARE "ARMS" UNDER THE SECOND AMENDMENT.

Contrary to the position of the district court which declined to meaningfully examine the history of the term "arm," that term "arms" has historically been understood to include more than just "weapon[s]" and "armor" and those components absolutely "necessary" for a firearm to function.  *Sanchez* at *4.

The district court entirely failed to engage with the historical meaning of the term "arms" when used by the Framers of the Second Amendment.  Definitions of "arms" are available from immediately before and immediately after the ratification of the Second Amendment.  Some of the cases relied on by the district court quoted *Heller*'s observation that "Timothy Cunningham's important 1771 legal dictionary defined 'arms' as 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'"  *Heller* at 581.

However, there are many other relevant sources.  A Delegate from Pennsylvania to the Continental Congress in 1788-89, Tench Coxe, observed immediately before ratification of the Second Amendment in 1791 that the militia's "swords, and **every other terrible implement of the soldier, are the birth-right of an American**."  A Pennsylvanian, No. 3, Pa. Gazette, Feb. 20, 1788, at 2 (emphasis added).  Shortly after the ratification, a legal treatise advised,

11

"[u]nder the word arms[] are included not only shields, swords and helmets, but also clubs and stones."  Thomas Branch, Principia Legis et Aequitatis at 14 (4th ed. 1822).  This broad understanding persisted well into the 19th century, when courts explained that "arms" are not only those implements which are "appropriate" for "use in self-defense" and "proper for the defense of the State" (*State v. Duke*, 42 Tex. 455, 458 (1874)), but also those which "constitute the ordinary military equipment."  *Aymette v. State*, 21 Tenn. 154, 158 (1840).

The district court claimed that the Second Amendment protects only accessories strictly necessary to the operation of a firearm, such as ammunition. *Sanchez* at *6.  But this is at direct odds with the Supreme Court's determination in *United States v. Miller*, 307 U.S. 174 (1939), that the Second Amendment protected the functioning of a citizen in a militia, by including:  "a good bayonet and iron ramrod well fitted thereto, a cartridge box properly made, [and] a good knapsack and canteen...."  *Id.* at 181.  Although some of those items were not "necessary" to operate a firearm, they nevertheless were included in the earliest understanding of "arms."

12

Additionally, the district court's narrow definition of "arms" flatly contradicts the Supreme Court's *Bruen* decision, which explained that "the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Bruen* at 28. Thus, the Second Amendment "covers modern instruments that **facilitate** armed self-defense." *Id.* (emphasis added). Many instruments **facilitate** armed self-defense, suppressors included. Indeed, as the district court admitted, suppressors are "desirable" to a person in "reducing noise, flash, or recoil, or in allowing the user to stay hidden while firing." *Sanchez* at *6. How a "modern instrument[]" which reduces the disorienting effects of gunfire and improves situational awareness does **not** "facilitate armed self-defense," the district court apparently did not feel necessary to explain. *Bruen* at 28.

At bottom, the term "arms" includes more than just the "weapon[s]," "armor," and "ammunition" that the district court would consider to be "arms."[4]

---

[4] Try as it might to distance "suppressors" from "firearms," the district court's holding ultimately sanctions the criminalization of **suppressed firearms**. What is more, the district court fails to consider integrally suppressed firearms (*e.g.*, https://www.silencershop.com/silencerco-maxim-9.html), whose suppressors are **permanently affixed** to their barrels and therefore are undoubtedly "**necessary** to a firearm's operation." Those are "weapons," and those "weapons" are "arms." And because the challenged statute clearly imposes a "firearm regulation" (*Bruen* at 17), the district court should have applied *Bruen*'s historical framework and required the government to defend the challenged law by

*Sanchez* at *6.  Under the district court's constrained view, none of the accessories or any of the other "equipment" which "the people" (especially a "well regulated Militia"[5]) use alongside firearms, such as firearm holsters, magazines, load-bearing equipment, camouflage clothing, iron sights, optics, lights, lasers, slings, field rations, hydration, or portable shelter, would be protected by the Second Amendment because they are not "weapons," "armor," or needed for the "operation of a firearm."  Yet these are precisely the sort of modern "accoutrements" the Founders contemplated and *Miller* acknowledged as "arms," and the Second Amendment protects them all.[6]

---

demonstrating a broad and enduring historical Founding-era tradition of banning ubiquitous firearm components and accessories.

[5] *See Miller* at 178 ("With obvious purpose to assure the continuation and render possible the effectiveness of such [militia] forces the declaration and guarantee of the Second Amendment were made.  It must be interpreted and applied with that end in view.").

[6] Not only does the Second Amendment cover "weapons," but it has been interpreted to also cover ancillary items which facilitate their use and training at arms.  *See, e.g., Teixeira v. Cty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017).  This includes a right to items such as barrels, triggers, ammunition, and magazines.  *See, e.g., Duncan v. Bonta*, 695 F. Supp. 3d 1206, 1223 (S.D. Cal. 2023).  The Second Amendment's ancillary protections have even been extended to protect shooting ranges*.  See, e.g., Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011); *Lynchburg Range & Training, LLC v. Northam*, 105 Va. Cir. 159, 162 (Lynchburg 2020).

14

## III. THE SECOND AMENDMENT'S PREFATORY CLAUSE CONFIRMS AN EXPANSIVE MEANING OF "ARMS."

The district court analysis, and the analysis of all authorities on which the district court relied, conveniently omit any analysis of the text of the entire Second Amendment, including its prefatory clause. With that Amendment, the Framers and ratifiers guaranteed to the People a "well regulated Militia" which it was understood was "necessary to the security of a free State...." U.S. Const. Amend. II. In *Heller*, the Supreme Court explained that the Second Amendment's prefatory militia clause "announces a purpose" for codifying the right — "to secure the ideal of a citizen militia, which might be necessary to oppose an oppressive military force if the constitutional order broke down." *Heller* at 577, 599. Thus, the Founders intended the Second Amendment to protect the keeping and bearing of the "ordinary military equipment" necessary to effectuate the militia clause. *Id.* at 624.

The militia clause "does not limit … grammatically" the operative right to keep and bear arms. *Id.* at 577. However, the Second Amendment was designed not only to "prevent elimination of the militia," which comprised only a subset of "the people," but also to protect "all Americans," "self-defense[,] and hunting," among all other lawful purposes. *Id.* at 599, 581, 599. But because "[l]ogic

15

demands that there be a link between the stated purpose and the command," the Second Amendment must protect, **at minimum**, that which gives effect to its prefatory clause. *Id.* at 577.

Consider the equipment currently used by the U.S. Marine Corps — the "tip of the spear" perhaps most analogous to the militia — which is instructive as to the sorts of equipment the prefatory militia clause contemplates.[7] Indeed, Marines are not unlike the Founding-era citizen-soldier and militiaman, operating in smaller groups at the front lines, often without artillery or much logistical support. And for almost a decade now, the United States has been issuing its Marines suppressors — instruments with "myriad benefits" in the government's own estimation.[8]

If the Second Amendment was intended to "prevent elimination of the militia" (*Heller* at 599), the government cannot eliminate militia equipment.[9] This protection extends to that equipment which was "not in existence at the time of the

---

[7] James Frazer, *Delivering Support to Front Lines*, Marines (Mar. 16, 2011).

[8] Matt Gonzales, *Marine Corps Begins Widespread Fielding of Suppressors*, Marines (Dec. 30, 2020).

[9] This understanding is entirely consistent with the Supreme Court's view in *United States v. Miller*, *supra*, which also applied the militia prefatory clause.

16

founding" (*Bruen* at 28), suppressors included. To hold otherwise "would be as mistaken as applying the protections of the right only to muskets and sabers." *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

## IV.  BECAUSE THE SECOND AMENDMENT PROTECTS ORDINARY MILITARY EQUIPMENT, IT MUST PROTECT SUPPRESSORS.

The district court's holding sweeps far afield, concluding that almost all firearm accessories, not just suppressors, are entirely undeserving of Second Amendment protection, on the theory that they are not themselves "weapons" or "armor" and are not strictly *necessary* to a firearm's operation. *See Sanchez* at *6. In addition to violating the plain meaning of the text, as further confirmed by the context of the prefatory clause, the district court's decision leads to absurd results. Take, for example, "America's rifle," the AR-15:



17

Such a quintessential firearm is undoubtedly an "arm" protected by the Second Amendment. Yet under the district court's analysis, this rifle's stock is not necessary to the AR-15's "operation, and thus not protected, even though it is certainly highly useful in effectively using an AR-15.

The same can be said for the above AR-15's pistol grip, handguard, magazine,[10] iron sights, and flash hider. Indeed, these items are merely attachments — or "accessories" — to the skeletal firearm. Unless detached and thrown, none of these parts by itself is a "weapon," nor is any "necessary" to the AR-15's mechanical function. Thus, under the district court's logic, none of the AR-15's accessory parts would be protected by the Second Amendment, leaving Americans to shoot the sort of ridiculous contraption pictured below:



The district court did not wrestle with these obvious implications of the atextual "arms" test it contrived. But based on the district court's interpretation,

---

[10] *See Ocean State Tactical, LLC v. Rhode Island*, 646 F. Supp. 368, 386 (D.R.I. 2022) ("a firearm can fire bullets without a detachable magazine").

18

any non-integral part, when separated from its host firearm, would itself not be a "weapon" and thus could be regulated (or banned) independently from the firearm itself.

Further, while acknowledging suppressors' use when shooting a firearm to "reducing noise, flash, or recoil, or in allowing the user to stay hidden while firing" (*Sanchez* at *6), the district court failed to recognize just how integral a suppressor can be to its host firearm. On many firearms, especially those utilizing rifle caliber ammunition out of short barrels, the concussive effect makes the weapon practically unshootable without a suppressor to tame the noise and flash of unburnt powder exiting the bore. On other firearms, the addition of a suppressor renders the weapon **more accurate**.[11]

To be sure, modern firearm suppressors did not exist at the Founding. But with advances in manufacturing and reductions in cost, the popularity of suppressors among American gun owners has grown exponentially.[12] And as *Heller* reminds, the Second Amendment extends to "those … bearable arms …

---

[11] *See* SilencerShop, "Do Suppressors Affect Accuracy? - Suppressor Accuracy Test," *YouTube.com* (Apr. 7, 2024).

[12] *See* Barry Snell, Recent Suppressor Registrations Eclipse Numbers for the NFA's First Eight Decades Combined, *Cong. Sportsmen's Found*. (Jan. 6, 2025).

that were not in existence at the time of the founding," and certainly protects "an entire class of 'arms' that is overwhelmingly chosen by American society for [a] lawful purpose." *Id*. at 582, 628. It would defy common sense to conclude that, had modern suppressors been available at the Founding, they would not have been found on the end of every militiaman's musket. Suppressors are precisely the sort of firearms accessory that the Founders envisioned would be protected for use by the People, and the People's militia, by the Second Amendment's use of the term "arms."

## CONCLUSION

For the foregoing reasons, California's ban on suppressors is inconsistent with and violates the Second Amendment. Thus, this Court should reverse the district court's decision.

Respectfully submitted,

_  /s/ Jeremiah L. Morgan_

JOHN I. HARRIS III
  SCHULMAN, LEROY &
  BENNETT, P.C.
  3310 West End Avenue
  Suite 460
  Nashville, TN 37203

*Attorneys for Amici Curiae*
April 4, 2025

JEREMIAH L. MORGAN*
WILLIAM J. OLSON
ROBERT J. OLSON
  WILLIAM J. OLSON, P.C.
  370 Maple Avenue W., Suite 4
  Vienna, VA  22180-5615
  (703) 356-5070
*Attorney of Record

20

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  24-5566

I am the attorney or self-represented party.

**This brief contains**  4,146  **words,** including  0  words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  s/Jeremiah L. Morgan  **Date**  4/4/25

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                                                    *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Brief *Amicus Curiae* of Gun Owners of California, Inc., *et al.*, in Support of Plaintiff-Appellant and Reversal was made, this 4th day of April 2025, by the Court's Appellate Case Management System upon the attorneys for the parties.

*/s/ Jeremiah L. Morgan*

_____

Jeremiah L. Morgan
Attorney for *Amici Curiae*