**No. 24-5566**

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

GARY SANCHEZ,

*Plaintiff and Appellant,*

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF CALIFORNIA

*Defendant and Appellee.*

On Appeal from the United States District Court
for the Southern District of California, Case No. 3:24-CV-00767
Hon. Robert S. Huie, District Judge

**BRIEF OF *AMICI CURIAE* GIFFORDS LAW CENTER TO PREVENT
GUN VIOLENCE AND BRADY CENTER TO PREVENT GUN VIOLENCE
IN SUPPORT OF DEFENDANT-APPELLEE AND AFFIRMANCE**

Anthony P. Schoenberg (SBN 203714)
Hilary C. Krase (SBN 318762)
Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400
tschoenberg@fbm.com
hkrase@fbm.com

*Attorneys for Amici Curiae*
Giffords Law Center to Prevent Gun
Violence and Brady Center to Prevent
Gun Violence

# TABLE OF CONTENTS

**PAGE**

I.  INTEREST OF *AMICI* ....................................................................1

    A.  Giffords Law Center to Prevent Gun Violence.....................................1

    B.  Brady Center to Prevent Gun Violence................................................2

II.  INTRODUCTION AND SUMMARY OF ARGUMENT............................3

III.  ARGUMENT.................................................................................5

    A.  Courts apply the two-part test from *Bruen* and *Rahimi* to determine the scope of the Second Amendment...................................5

    B.  Supreme Court precedent establishes that the Second Amendment's core purpose is to protect the right of a person to use arms for the purpose of lawful self-defense....................................6

    C.  Silencers are not protected by the plain text of the Second Amendment because they do not promote the elements of lawful self-defense. ................................................................10

        1.  State criminal law defines lawful self-defense, and silencers do not fall within these protections............................11

        2.  A silencer is an accessory to a weapon, not a weapon itself, and thus falls outside the scope of the plain text of the Second Amendment. ............................................................12

        3.  Even companies that sell silencers view and market them as accessories for a gun............................................................17

IV.  CONCLUSION.............................................................................18

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bevis v. City of Naperville, Ill.*,
    85 F.4th 1175 (7th Cir. 2023) ................................................................. 9

*Bianchi v. Brown*,
    111 F.4th 438 (4th Cir. 2024), *cert. denied,* 605 U.S. __ (June 2,
    2025) ..................................................................................................... 10

*Capen v. Campbell*,
    708 F. Supp. 3d 65 (D. Mass. 2023) .................................................... 15

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland
    Sec.*,
    108 F.4th 194 (3d Cir. 2024) ................................................................. 9

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ..................................................................... *passim*

*Duncan v. Bonta*,
    133 F.4th 852 (9th Cir. 2025) (en banc) ...................................... *passim*

*Fyock v. Sunnyvale*,
    779 F.3d 991 (9th Cir. 2015), *abrogated on other grounds by
    Bruen*, 597 U.S. 1 ................................................................................. 8

*Miller-Wohl Co., Inc. v. Comm'r of Labor & Indus. State of Mont.*,
    694 F.2d 203 (9th Cir. 1982) ................................................................. 2

*Muscarello v. United States*,
    524 U.S. 125 (1998) ................................................................................. 7

*New York State Rifle & Pistol Ass'n., Inc. v. Bruen*,
    597 U.S. 1 (2022) ......................................................................... *passim*

*Second Amendment Found., Inc. v. Bureau of Alcohol, Tobacco,
    Firearms and Explosives*,
    702 F. Supp. 3d 513 (N.D. Tex. 2023) ............................................ 4, 15

*United States v. Alaniz*,
    69 F.4th 1124 (9th Cir. 2023) ...................................................... 5, 6, 8

ii

*United States v. Beaty*,
   2023 WL 9853255 (M.D. Fla. Jan. 20, 2023) ....................................................15

*United States v. Berger*,
   2024 WL 449247 (E.D. Pa. Feb. 6, 2024) .........................................................15

*United States v. Cooperman*,
   2023 WL 4762710 (N.D. Ill. July 26, 2023) ....................................................15

*United States v. Cox*,
   906 F.3d. 1170 (10th Cir. 2018) .................................................................13, 15

*United States v. DeFelice*,
   2024 WL 3028425 (D. Conn. June 17, 2024) ..................................................15

*United States v. Hasson*,
   2019 WL 4573424 (D. Md. Sept. 20, 2019).....................................................15

*United States v. Kaczmarek*,
   2023 WL 5105042 (E.D. Mich. Aug. 9, 2023)..................................................15

*United States v. McCartney*,
   357 Fed. App'x 73 (9th Cir. 2009), *cert. denied*, 559 U.S. 1021
   (2010)..............................................................................................................13

*United States v. Peterson*,
   127 F.4th 941, 946 (5th Cir. 2025) (pet. for rehearing en banc pending)..........14

*United States v. Rahimi*,
   602 U.S. 680 (2024)...............................................................................3, 5, 6, 8

*United States v. Royce*,
   2023 WL 2163677 (D.N.D. Feb. 22, 2023)......................................................15

*United States v. Saleem*,
   2024 WL 5084523 (4th Cir. Dec. 12, 2024) .................................................... 14

*United States vs. Villalobos*,
   2023 WL 3044770 (D. Idaho Apr. 21, 2023) ....................................................13

## STATE CASES

*People v. Uriarte*,
223 Cal. App. 3d 192 (1990) ...................................................................11

## FEDERAL RULES

Federal Rule of Appellate Procedure 29(a) .............................................1

Circuit Rule 29-1 (9th Cir.).......................................................................1

## OTHER AUTHORITIES

Black's Law Dictionary 214 (6th ed. 1990) .............................................7

California Jury Instructions – Criminal, No. 505 (2025 edition) .....................10, 11

*Firearms Policy Position Statement*, International Association of
Chiefs of Police, https://www.theiacp.org/sites/default/files/2019-
05/IACP%20Firearms%20Position%20Paper_2018%20(1).pdf
(last visited June 3, 2025) ................................................................... 16

*The SHARE Act Is Dangerous and Unnecessary*, Everytown Research
& Policy (Feb. 1, 2018), https://everytownresearch.org/report/the-
share-act-is-dangerous-and-unnecessary/...........................................17

*How To Choose The Best Suppressor: 4 Key Considerations*,
SilencerShop, https://www.silencershop.com/blog/choose-best-
suppressor (last visited June 3, 2025).................................................17

*Hybrid 46M*, SilencerCo, https://silencerco.com/silencers/hybrid-46m
(last visited June 3, 2025) ...................................................................17

*Suppressors by SilencerCo,* SilencerCo,
https://silencerco.com/silencers/gun-parts (last visited June 3,
2025) ....................................................................................................17

Stephen P. Halbrook, *Firearms and Sound Moderators: Issues of
Criminalization and the Second Amendment*, 46 CUMB. L. REV. 33,
42 (2015)..............................................................................................10

U.S. Const. Amendment II........................................................................5

iv

## I.  INTEREST OF *AMICI*[1]

The undersigned *amici* offer this *amicus* brief in support of Appellee and Defendant Rob Bonta in his official capacity as Attorney General of the State of California ("Appellee") and affirmance.[2]

### A.  Giffords Law Center to Prevent Gun Violence

Giffords Law Center to Prevent Gun Violence ("Giffords Law Center") is a nonprofit policy organization serving lawmakers, advocates, gun violence survivors, and others who seek to reduce gun violence and improve the safety of their communities.  For over 30 years, Giffords Law Center has researched, drafted, and defended the laws, policies, and programs proven to effectively reduce gun violence.  Giffords Law Center has contributed technical expertise and informed analysis as an *amicus* before the United States Supreme Court and circuit courts across the country.

---

[1]  *Amici curiae* submit this brief under Federal Rules of Appellate Procedure, Rule 29(a) and Circuit Rule 29-1.  Undersigned counsel for *amici curiae* certify that this brief was not authored in whole or in part by counsel for any of the parties; no party or party's counsel contributed money for the brief; and no one other than *amici* has contributed money for this brief.

[2]  Both Appellant Gary Sanchez and Appellee Rob Bonta in his official capacity as Attorney General of the State of California consented to the filing of this *amicus* brief.

1

**B.    Brady Center to Prevent Gun Violence**

Brady Center to Prevent Gun Violence ("Brady") is the nation's oldest gun violence prevention group. The organization's principal purpose is threefold: (1) to advocate for sensible gun reform, (2) to monitor the gun industry to ensure that it is following the rules, and (3) to promote culture change regarding how Americans use, own, and perceive firearms. In pursuit of these goals, Brady has filed *amicus* briefs at the Supreme Court and in circuit and district courts across the country.

Together, Giffords Law Center and Brady seek to fulfill the "classic role of *amicus curiae* by assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration." *Miller-Wohl Co., Inc. v. Comm'r of Labor & Indus. State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982). They offer this brief to provide the Court with additional information and context regarding the development of the Second Amendment's conception of self-defense, and the application of the Ninth Circuit's recent holding in *Duncan v. Bonta*, 133 F.4th 852 (9th Cir. 2025) (en banc) to the challenged gun accessories—silencers—at issue in the instant case.

2

## II.   INTRODUCTION AND SUMMARY OF ARGUMENT

The decision in this case will no doubt impact the landscape of the Second Amendment and its scope.  The question of whether the trial court correctly found that a silencer does not fall within the plain text of the Second Amendment is of central importance: Does the Second Amendment protect accessories to firearms, much less ones that are not in common use today for lawful self-defense?  The answer must be "no."

In reaching this conclusion, we rely on the Supreme Court's determination that the Second Amendment's core purpose is to protect lawful self-defense, which includes protection for arms commonly used for that purpose.  We also recognize that the framework established by the Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*,[3] and clarified in *United States v. Rahimi*,[4] requires courts to first consider whether the Second Amendment's plain text covers the conduct in question.  If a court determines that the answer is "no," the conduct does not enjoy Second Amendment protections, and the inquiry ends there.

As Appellee's Replacement Answering Brief demonstrates, the trial court's decision was correct and should be affirmed.  The conduct in question—the use and possession of silencers—is not protected by the Second Amendment.  We do

---

[3]   *New York State Rifle & Pistol Ass'n., Inc. v. Bruen*, 597 U.S. 1 (2022).

[4]   *United States v. Rahimi*, 602 U.S. 680 (2024).

not wish to waste this Court's time duplicating the State's arguments establishing that point. Instead, as *amici*, we wish to assist this Court by describing an additional ground to affirm the district court's judgment here: silencers are simply not in common use today for lawful self-defense, and thus there is no Second Amendment right to possess them. To establish this conclusion, we emphasize two points:

*First*, all circuits to have considered whether silencers constitute "arms" have answered the question in the negative. Indeed, very recently in *Duncan*, this Court suggested that a silencer is a firearm accessory not protected by the Second Amendment. 133 F.4th at 868.

*Second*, silencers do not promote lawful self-defense as the phrase has been historically understood under criminal law. Thus, the use of silencers falls outside the embrace of the Second Amendment's protections. Silencers do not assist a person in responding with appropriate force to an imminent threat, the core feature of lawful self-defense under state law. Moreover, silencers do not allow the shooter to exercise force more quickly in response to an imminent threat. Nor do they assist the shooter with calibrating the level of force applied in response to the threat.

For these reasons, and those advanced by Appellee, the trial court's decision should be affirmed.

4

## III.   ARGUMENT

### A.   Courts apply the two-part test from *Bruen* and *Rahimi* to determine the scope of the Second Amendment.

The Supreme Court has held that the Second Amendment protects an individual right to keep and bear arms for purposes of self-defense. *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).  At the same time, the Court has recognized that this right "is not unlimited." *Id.*  The right does not allow individuals to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.*  Rather, the boundaries of the Second Amendment are determined by a two-part test set forth in *Bruen* and clarified in *Rahimi*. *See Duncan*, 133 F.4th at 865 (applying the two-part *Bruen* and *Rahimi* methodology); *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023) (describing the *Bruen* methodology as a "two-part test").

At step one, the court considers whether the regulated conduct is covered by the Second Amendment's plain text. *Bruen*, 597 U.S. at 17.  "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.*  "The text of the Second Amendment encompasses 'the right of the people to keep and bear Arms.'" *Duncan*, 133 F.4th at 866 (quoting U.S. Const. amend. II.).

When, at step one, the regulated conduct falls outside of the plain text of the Second Amendment, the court need not proceed to step two—the Second

5

Amendment analysis ends and the challenge fails. *See Alaniz*, 69 F.4th at 1128 ("*Bruen* step one involves a threshold inquiry."); *see also Duncan*, 133 F.4th at 869 ("Because the text of the Second Amendment does not encompass the right to possess large-capacity magazines, we hold that Plaintiffs' Second Amendment claim fails."). By contrast, if the conduct is covered by the Second Amendment's text at step one, the burden then shifts to the government to justify its regulation by demonstrating that it is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24; *see also Rahimi*, 602 U.S. at 692 ("As we explained in *Bruen*, the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition.").

This Court need not proceed past the first step because the conduct in question (use of a silencer attached to a firearm) does not fall within the plain text of the Second Amendment. Accordingly, this brief focuses exclusively on the first step plain text inquiry.[5]

## B. Supreme Court precedent establishes that the Second Amendment's core purpose is to protect the right of a person to use arms for the purpose of lawful self-defense.

As discussed *supra*, when bringing a Second Amendment challenge, the

---

[5]    However, to the extent the Court reaches the second step of *Bruen*, *amici* agree with Appellee's analysis in its Replacement Answering Brief.

law's challenger must show that the law implicates the "plain text" the Second Amendment.  In other words, the challenger needs to demonstrate that the conduct regulated by the law is *actually protected* by the Second Amendment.

The Supreme Court has held that the Second Amendment protects the right of a person to "keep" and "bear" arms for lawful self-defense.  In *Heller*, the Supreme Court characterized self-defense as "the core lawful purpose" behind the enactment of the Second Amendment.  554 U.S. at 629–30.  According to *Heller*, the 18th century meaning of "bear arms" was to "'wear, bear, or carry…upon the person or in the clothing or in a pocket, for the purpose…of being armed and ready for offensive or *defensive* action in a case of conflict with another person."  *Id*. at 584 (quoting *Muscarello v. United States*, 524 U.S. 125, 131 (1998) (dissenting opinion) (quoting Black's Law Dictionary 214 (6th ed. 1990))) (emphasis added).  The Court examined the analogous right to bear arms set forth in state constitutions and concluded that "they secured an individual right to bear arms for defensive purposes."  *Id.* at 602.[6]  Thus, as the *Heller* Court concluded, lawful self-defense is the key feature of the Second Amendment.  *Id.* at 599.

---

[6]     For example, Clause XIII of the Pennsylvania Declaration of Rights of 1776 provides in part: "That the people have a right to bear arms *for the defence of themselves* and the state ...."  *Id.*  Likewise, North Carolina codified a right to bear arms: "'That the people have a right to bear arms for the defence of the State . . . .'"  *Id.* at 601 (citing Declaration of Rights § XVII).  Additional states later adopted Second Amendment analogues referencing the right to "'bear arms in defence of themselves and the State.'"  *Id.*  And three states included clauses

7

Since *Heller*, the Supreme Court has reaffirmed this principle: The Second Amendment protects the right to possess arms used for lawful self-defense.  In *Bruen*, the Court held that the plain text of the Amendment covered carrying a handgun in public for self-defense, explaining that "handguns are weapons 'in common use' today for self-defense."  597 U.S. at 3.  More recently, the *Rahimi* Court reiterated: "[T]he [Second Amendment] right secures for Americans a means of self-defense."  602 U.S. at 690.

This Court has applied this self-defense framework to decide the scope of the Second Amendment right both pre- and post-*Bruen*.  Although using different nomenclature, in *Fyock v. Sunnyvale*, this Court noted that "[r]egulation of a weapon not typically possessed by law-abiding citizens for lawful purposes does not implicate the Second Amendment," recognizing that the Second Amendment has "the core lawful purpose of self-defense."  779 F.3d 991, 996, 997 (9th Cir. 2015), *abrogated on other grounds by Bruen*, 597 U.S. 1.  Likewise, post-*Bruen*, the Ninth Circuit, in examining whether a weapon falls within the scope of the Second Amendment's plain text, has looked at whether such weapon is "'in common use' today for self-defense[.]"  *Alaniz*, 69 F.4th at 1128.

---

making clear that each citizen had an individual right to bear arms in self-defense: "[T]he 'right to bear arms in defence of himself and the State.'"  *Id.* at 602.

8

And, most recently, in *Duncan*, this Court held that large-capacity magazines are not protected by the Second Amendment because they are neither "arms" nor accessories necessary to the functioning of the weapon (i.e., required to use the arm). 133 F.4th at 860. In reaching its holding, this Court reasoned, in part, that:

> The only effect of California's law on armed self-defense is the limitation that a person may fire no more than ten rounds without pausing to reload, something rarely done in self-defense.

*Id.* The Court further explained that large-capacity ammunition magazines are not "weapons used in armed self-defense," which are the "Arms" protected by the plain text of the Second Amendment. *Id.* at 867.

This Court's analysis in *Duncan* is consistent with other circuits, which have interpreted "arms" as weapons used for self-defense. *See, e.g.*, *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 211 (3d Cir. 2024) ("*Heller* holds, and its progeny affirms, that self-defense is '*the* core lawful purpose' protected by the Second Amendment. While . . . other uses [of weapons] may be lawful, the Supreme Court has never recognized them as 'core' purposes protected by the Second Amendment. Until it might do so, the 'bearable arms' presumptively protected by the Second Amendment are limited to weapons used explicitly for self-defense."); *Bevis v. City of Naperville, Ill.*, 85 F.4th 1175, 1193 (7th Cir. 2023) ("[T]he definition of 'bearable Arms' extends only to

9

weapons in common use for a lawful purpose.  That lawful purpose, as we have

said several times, is at its core the right to individual self-defense."); *Bianchi v.*

*Brown*, 111 F.4th 438, 459 (4th Cir. 2024), *cert. denied,* 605 U.S. __ (June 2,

2025) (analyzing whether AR-15s fall within the ambit of the Second Amendment

by examining their compatibility "with lawful carry for self-defense." (quoting

*Bruen*, 597 U.S. at 50)).

### C. Silencers are not protected by the plain text of the Second Amendment because they do not promote the elements of lawful self-defense.

Silencers are accessories that are not necessary for the functioning of a

firearm, and that do not promote lawful self-defense.  This is made even more clear

by examining California's state criminal law definition of "self-defense."  Under

California state criminal law, self-defense requires the quick exercise of deadly

force in response to a reasonable belief of an imminent threat.  Judicial Council of

California Criminal Jury Instructions, CALCRIM No. 505 (2025 edition).  It also

requires the gun's user to calibrate the amount of force reasonably necessary to

defend against that danger.  *Id.*  Silencers assist with neither of these requirements,

and thus do not promote lawful self-defense.  *See* Stephen P. Halbrook, *Firearms*

*and Sound Moderators: Issues of Criminalization and the Second Amendment*, 46

CUMB. L. REV. 33, 42 (2015) (noting that the patent application for the original

silencer described it as a device attached to a rifle that causes the energy of the

10

powder gases to dissipate in a spiral motion after the gun is fired but before the gases pass into the atmosphere, thereby reducing noise).

### 1. State criminal law defines lawful self-defense, and silencers do not fall within these protections.

In California, lawful self-defense requires (1) a reasonable belief in imminent danger, (2) a reasonable belief that the immediate use of deadly force was necessary to defend against the danger, and (3) that the defendant used no more force than was reasonably necessary to defend against that danger. CALCRIM No. 505. The first and second factors establish that lawful self-defense requires the ability to exercise force in response to imminent danger. *Id.* The third factor establishes that self-defense also requires the shooter to evaluate the threat and calibrate the use of force as the imminency and gravity of the threat dissipates. *See People v. Uriarte*, 223 Cal. App. 3d 192, 197–98 (1990) (defendant was not justified in fatally shooting captors despite reasonable belief that his wife was held in a closet and had been abused when several captors were incapacitated at the time of the shooting).

Silencers are neither necessary to achieve the elements of lawful self-defense nor do they promote the elements of lawful self-defense. A silencer does not allow the gun's user to exercise force more quickly in response to a reasonable belief of an imminent threat—the first and second elements of lawful self-defense—because it simply muffles the sound of the gun *once the trigger has been*

11

*pulled*. *See infra* Halbrook, *Firearms and Sound Moderators*, at 42. Nor does a silencer assist the gun's user with calibrating the amount of force reasonably necessary to defend against that danger—the third element of lawful self-defense. Indeed, a silencer's only real use occurs after the shooter decides to use force and pulls the trigger. *Id.* Thus, it falls outside of the embrace of the rights protected by the Second Amendment.

### 2. A silencer is an accessory to a weapon, not a weapon itself, and thus falls outside the scope of the plain text of the Second Amendment.

As this Court has already contemplated, a silencer is a firearm accessory not protected by the Second Amendment. In *Duncan*, this Court explained that accessories not necessary to weapon function do not come within the embrace of the Second Amendment's protection. 133 F.4th at 867. The *Duncan* court was clear: "[T]he plain text of the Amendment protects the right to bear 'Arms,' not accessories to firearms that are neither arms themselves nor necessary to the ordinary functioning of a firearm. Because large-capacity magazines are neither weapons nor accessories that are necessary to the operation of a weapon, the Second Amendment's plain text does not protect possession of large-capacity magazines." *Id.* at 865. Silencers are no different. *Id.* at 868. The *Duncan* court agreed: "[M]any optional accessories—such as a high-powered scope for a rifle, a gun sling, or a *silencer*—may be attached to a firearm without necessarily falling

12

within the scope of the text of the Second Amendment." *Id.* (citing *United States v. Cox,* 906 F.3d. 1170, 1186 (10th Cir. 2018)) (emphasis added).

Likewise, in *United States v. McCartney*, 357 Fed. App'x 73, 76 (9th Cir. 2009), *cert. denied*, 559 U.S. 1021 (2010),[7] this Court concluded that a defendant did not have a Second Amendment right to possess a machine gun, silencer, grenade, or a directional mine because those items were dangerous and unusual. In particular, the Court reasoned that silencers—along with the other items in question—do not fall within the embrace of the Second Amendment right because they "are not 'typically possessed by law-abiding citizens for lawful purposes'" (quoting *Heller*, 554 U.S. at 625).

This Court's characterization of a silencer as a firearm accessory—not a firearm itself—is also consistent with all of its sister circuits that have considered the issue. In *United States v. Cox*, the Tenth Circuit held that "[a] silencer is a firearm accessory; it's not a weapon in itself (nor is it 'armour of defence'). Accordingly, it can't be a 'bearable arm' protected by the Second Amendment. Thus, because silencers are not 'bearable arms,' they fall outside the Second Amendment's guarantee." 906 F.3d at 1186 (footnote omitted).

---

[7]    Relying on *McCartney* (as well as the Tenth Circuit's decision in *Cox* (*see infra*)), a district court within this Circuit also held that "silencers are not bearable arms within the meaning of the Second Amendment and are not constitutionally protected." *United States vs. Villalobos*, 2023 WL 3044770, at \*12 (D. Idaho Apr. 21, 2023).

The Fourth Circuit, too, has held that silencers are not arms protected by the

Second Amendment:

> While a silencer may be a firearm accessory, it is not a
> "bearable arm" that is capable of casting a bullet.
> Moreover, while silencers may serve a safety purpose to
> dampen sounds and protect the hearing of a firearm user
> or nearby bystanders, it fails to serve a core purpose in
> the arm's function. A firearm will still be useful and
> functional without a silencer attached, and a silencer is
> not a key item for the arm's upkeep and use like cleaning
> materials and bullets. Thus, a silencer does not fall
> within the scope of the Second Amendment's protection.
> The district court therefore properly denied [the
> defendant's] motion to dismiss the indictment based on
> *Bruen.*

*United States v. Saleem*, 2024 WL 5084523, at \*2 (4th Cir. Dec. 12, 2024) (citation

omitted).

Finally, just this year, the Fifth Circuit in *United States v. Peterson* held that

a silencer or suppressor is a firearm accessory and not a weapon protected by the

Second Amendment. 127 F.4th 941, 946 (5th Cir. 2025) (petition for rehearing en

banc pending). "A suppressor, by itself, is not a weapon. Without being attached

to a firearm, it would not be of much use for self-defense. And unless a suppressor

itself is thrown (which, of course, is not how firearms work), it cannot do any

casting or striking." *Id.* In reaching this conclusion, the Fifth Circuit pointed out

that all courts that have reached the question of "[w]hether suppressors constitute

'arms'" have "decided the question in the negative." *Id.*

14

District courts across the country have reached the same conclusion.[8]  Thus,

in holding that silencers are not protected by the Second Amendment, this Court

would join numerous sister circuits and district courts that have held the same

thing.

---

[8]     *See United States v. DeFelice*, 2024 WL 3028425, at *7 (D. Conn. June 17,
2024) (adopting the reasoning from *Cox* that a silencer cannot be considered a
bearable arm because it is a firearm accessory and not a weapon itself); *United
States v. Berger*, 2024 WL 449247, at *17 (E.D. Pa. Feb. 6, 2024) ("[A] silencer ...
is merely an accessory which is unnecessary to the essential operation of a
firearm."); *Capen v. Campbell*, 708 F. Supp. 3d 65, 89 (D. Mass. 2023) ("On the
other hand, some accessories, such as silencers, do not affect the essential
operation of a weapon and so do not fall within the scope of the Second
Amendment's protection."); *Second Amendment Found., Inc. v. Bureau of Alcohol,
Tobacco, Firearms and Explosives,* 702 F. Supp. 3d 513, 536–37 (N.D. Tex. 2023)
("[A]n 'accessory' like a silencer does not implicate the Second Amendment
because 'a firearm remains an effective weapon without a silencer.'"); *United
States v. Kaczmarek*, 2023 WL 5105042, at *2 (E.D. Mich. Aug. 9, 2023) ("[A]
silencer is not a 'firearm.' Rather, a 'silencer is a firearm accessory' and does not
fall within the scope of the Second Amendment's protection."); *United States v.
Cooperman,* 2023 WL 4762710, at *1 (N.D. Ill. July 26, 2023) ("The Court finds
the reasoning in *Cox* persuasive —as a firearm accessory, silencers are not
weapons and therefore cannot be 'bearable arms' protected by the Second
Amendment."); *United States v. Royce,* 2023 WL 2163677, at *4 (D.N.D. Feb. 22,
2023) ("A silencer is not necessary to make a firearm operable. Rather, a silencer
is simply a means to reduce sound omitted from a firearm" and adopting the
reasoning from *Cox* that "[a] silencer is a firearm accessory; it's not a weapon in
itself (nor is it 'armour of defence').");  *United States v. Beaty,* 2023 WL 9853255,
at *8 (M.D. Fla. Jan. 20, 2023) ("[S]ilencers are not bearable arms; they are
accessories."); *United States v. Hasson,* 2019 WL 4573424, at *2 (D. Md. Sept. 20,
2019) (Silencers "generally have no use independent of their attachment to a
gun.").

15

Appellant Sanchez ignores these myriad cases and continues to insist that a suppressor "constitutes a bearable arm" because it is "a component part of a safe and effective firearm[.]"  Opening Brief at 15.  To support this point, Sanchez emphasizes that, regardless of whether the suppressor can be detached from the gun, ". . . the point remains the same[:] a suppressor is the preferred method to ensure that a firearm user and any bystanders to do not suffer hearing damage from the sound emitted from a firearm."  *Id.*  But that is not the test set forth by this Court in *Duncan*: "The proper inquiry for [whether] an item that is not an arm itself [falls within the plain text of the Second Amendment] is whether the component or accessory is *necessary to the ordinary operation of the weapon*[.]"  133 F.4th at 868 (emphasis added).  A silencer is, by definition, not necessary to the ordinary operation of the weapon.  It simply muffles the sound of gunfire once the trigger has been pulled.  Halbrook, *Firearms and Sound Moderators*, at 41–42 (suppressors function by suppressing the gas emanating from a fired weapon).

Indeed, silencers seriously undermine law enforcement.  By suppressing sound and muzzle flash, they make it much harder for law enforcement to respond when there is an active shooter—it can be more difficult for the police to locate the shooter in order to respond and to protect themselves.  *Firearms Policy Position Statement*, International Association of Chiefs of Police, https://www.theiacp.org/sites/default/files/2019-05/IACP%20Firearms%20Position%20Paper_2018%

16

20(1).pdf (last visited on June 3, 2025).  And silencers can hide the fact that a crime is in progress and a dangerous situation is present.  Bystanders and law enforcement might not even know at first that a shooting is happening—they might simply see victims inexplicably dropping dead or wounded around them or nearby. *The SHARE Act Is Dangerous and Unnecessary*, Everytown Research & Policy (Feb. 1, 2018),  https://everytownresearch.org/report/the-share-act-is-dangerous-and-unnecessary/.

### 3. Even companies that sell silencers view and market them as accessories for a gun.

Companies that sell silencers define silencers the same way—as accessories to weapons, or items that enhance the experience of shooting.  For example, SilencerCo advertises itself as follows: "SilencerCo specializes in innovation and developing suppressors that uniquely *enhance the shooting experience*." *Suppressors by SilencerCo*, SilencerCo, https://silencerco.com/silencers/gun-parts (last visited June 3, 2025) (emphasis added).  "A silencer is the best accessory you can get for your firearm." *How To Choose The Best Suppressor: 4 Key Considerations*, SilencerShop, https://www.silencershop.com/blog/choose-best-suppressor (last visited June 3, 2025).  In fact, SilencerCo advertises some silencers as "versatile[] to use on most rifles, pistols, and submachine guns." *Hybrid 46M*, SilencerCo, https://silencerco.com/silencers/hybrid-46m (last visited June 3, 2025).

Patents for silencers are no different. They too describe silencers as accessories. *See, e.g.*, United States Patent US 11,255,623 B2 (describes a suppressor as a "muzzle accessory that reduces the audible report of the firearm by slowing the expansion and release of pressurized gases from the barrel."); United States Patent US 10,502,512 B1 (describes a firearm muzzle as an "accessory to a firearm.").

Companies that sell silencers and the inventors who design silencers have the deepest understanding of their use. These entities and individuals define silencers as accessories, not as firearms. Courts should not depart from that understanding in their analysis of the Second Amendment.

## IV.    <u>CONCLUSION</u>

Silencers are not protected by the Second Amendment's plain text. A silencer is an accessory to a weapon, not a weapon itself. Moreover, silencers do not promote lawful self-defense under traditional state criminal law definitions of "self defense." For the reasons set forth here, and those advanced by Appellee, the trial court's decision should be affirmed.

Dated: June 4, 2025              FARELLA BRAUN + MARTEL LLP

By: *Hilary Krase*
Hilary C. Krase

Attorneys for *Amici Curiae* Giffords Law Center to Prevent Gun Violence and Brady Center to Prevent Gun Violence

18

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-5566

I am the attorney or self-represented party.

**This brief contains** 4,355 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⦿ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Hilary C. Krase **Date** June 4, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*

19

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 4, 2025, I electronically filed the foregoing **Brief of Amici Curiae Giffords Law Center to Prevent Gun Violence and Brady Center to Prevent Gun Violence in Support of Defendant-Appellee and Affirmance** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS electronic filing system.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

_Gina C. Renteria_
_____
Gina C. Renteria